UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| MICHAL BOUSSO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SPIRE GLOBAL, INC., PETER PLATZER, and LEONARDO BASOLA, <br><br> Defendants. | Case No.  1:24-cv-01458-MSN-WEF |
| KOHEI TAGAWA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPIRE GLOBAL, INC., PETER PLATZER, THOMAS KRYWE, and LEONARDO BASOLA, <br><br> Defendants. | Case No.  1:24-cv-01810-MSN-LRV |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF WOJCIECH SOKOLOWSKI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 5

    I.      THE COURT SHOULD ASSESS FINANCIAL INTEREST WITH
            REFERENCE TO THE ORIGINALLY PLED CLASS PERIOD IN THE
            *BOUSSO* ACTION ........................................................................................ 5

    II.     THE COURT SHOULD APPOINT SOKOLOWSKI AS LEAD PLAINTIFF ..... 9

         A.     Sokolowski Has the Largest Financial Interest........................................... 9

         B.     Sokolowski Satisfies the Applicable Requirements of Rule 23................ 10

    III.    THE COMPETING MOTIONS SHOULD BE DENIED ................................... 12

         A.     No Competing Movant Has a Larger Financial Interest than Sokolowski
             with Reference to the Appropriate Class Period...................................... 12

         B.     Errors and/or Falsities in Tagawa's Motion Papers Render Him
             Inadequate Under Rule 23 ....................................................................... 12

CONCLUSION...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bodri v. GoPro, Inc.*,
No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28,
2016) ..................................................................................................................6

*Camp v. Qualcomm Inc.*,
No. 18-cv-1208-AJB-BLM, 2019 U.S. Dist. LEXIS 10269 (S.D. Cal. Jan. 22,
2019) .............................................................................................................4, 13

*Chamblee v. Terraform Power, Inc.*,
No. PX 16-981, 2016 U.S. Dist. LEXIS 98619 (D. Md. July 28, 2016) ......................9, 10, 12

*Grad v. Ironnet, Inc.*,
No. 1:22-cv-00449, 2022 U.S. Dist. LEXIS 125880 (E.D. Va. July 15, 2022).............9, 10, 12

*Hachem v. GE Inc., No. 17-CV-8457 (JMF)*,
2018 U.S. Dist. LEXIS 62278 (S.D.N.Y. Apr. 11, 2018)..........................................................8

*Hirtenstein v. Cempra, Inc.*,
No. 1:16cv1303, 2017 U.S. Dist. LEXIS 103799 (M.D.N.C. July 5, 2017) .................9, 10, 12

*In re Akorn, Inc. Sec. Litig.*,
No. 1:15-cv-01944, Dkt. Nos. 51 (N.D. Ill. June 15, 2015) .......................................................8

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020)..............................13

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) .......................................................................................5

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) ...........................................................................................3, 11

*In re E.spire Communs., Sec. Litig.*,
231 F.R.D. 207 (D. Md. 2000)...............................................................................................1, 9

*In re Microstrategy Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................................1, 3, 9, 11

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 421 (E.D. Pa. 2005).................................................................................................9

*In re Vonage Initial Pub. Offering Secs. Litig.*,
No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007).............................13

*Johnson v. Pozen, Inc.*,
No. 1:07CV599, 2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008) ......................3, 11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
947 F. Supp. 2d 366 (S.D.N.Y. 2013)........................................................................................6

*Lako v. Loandepot, Inc.*,
No. 8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063 (C.D. Cal. May
2, 2022) ........................................................................................................................13, 14, 15

*Luongo v. Desktop Metal, Inc.*,
Civil Action No. 1:21-cv-12099-IT, 2022 U.S. Dist. LEXIS 119570 (D. Mass.
July 7, 2022)..........................................................................................................................6, 8

*Maliarov v. Eros Int'l PLC*,
No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5,
2016) ......................................................................................................................................6, 8

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ............................................................................................5

*Ragan v. Appharvest, Inc., No. 21-cv-7985 (LJL)*,
2021 U.S. Dist. LEXIS 238168 (S.D.N.Y. Dec. 13, 2021) ......................................................7

*Rodriguez v. Draftkings Inc.*,
No. 21 Civ. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12,
2021) .........................................................................................................................3, 12, 16

*Takara Trust v. Molex, Inc.*,
229 F.R.D. 577 (N.D. Ill. 2005)..............................................................................................10

*Tomaszewski v. Trevena, Inc.*,
383 F. Supp. 3d 409 (E.D. Pa. 2019) ..................................................................................4, 13

*Villare v. Abiomed, Inc.*,
No. 19 Civ. 7319 (ER), 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29,
2020) ........................................................................................................................................5

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Lead Plaintiff Movant Sokolowski[1] respectfully submits this memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel (Dkt. No. 25); and in opposition to the competing motions of: (i) Kohei Tagawa ("Tagawa") (Dkt. No. 19); and (ii) Michal Bousso ("Bousso") (Dkt. No. 22).

## PRELIMINARY STATEMENT

The Related Actions are putative class action securities fraud lawsuits on behalf of investors in Spire Global securities.[2]  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant with the greatest financial interest in the outcome of the litigation; and that satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Sokolowski.  First, Sokolowski has claimed a largest financial interest in this litigation than any competing movant.  Although the PSLRA does not define "financial interest," courts in the Fourth Circuit, including this District, recognize that the amount of financial loss incurred during the class period is the most significant factor to be considered.  *See, e.g.*, *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 434, 436 (E.D. Va. 2000) (equating financial interest with economic loss); *In re E.spire Communs., Sec. Litig.*, 231 F.R.D. 207, 212-13 (D. Md. 2000) (same).  Here, Sokolowski has incurred losses of approximately $34,874 calculated on a FIFO basis, or $36,768 calculated on a LIFO basis, in connection with his transactions in Spire

---

[1] All capitalized terms herein are defined in Sokolowski's moving brief, unless otherwise indicated.  *See* Dkt. No. 26.

[2] Here, all movants seeking appointment as lead plaintiff have sought consolidation of the Related Actions.  *See* Dkt. Nos. 19, 22, 25.

Global securities during the Class Period alleged in the first-filed *Bousso* Action—*i.e.*, March 6, 2024 through August 14, 2024.[3]  *See* Dkt. No. 27-1.  The table below sets forth Sokolowski's financial interest as compared to that of the competing movants with reference to the relevant Class Period:[4]

| Movant | FIFO Loss | LIFO Loss |
|---|---|---|
| Sokolowski | $34,874 | $36,768 |
| Bousso | $3,579 | $3,579 |
| ~~Tagawa~~ | ~~$29,284~~ | ~~$29,285~~ |

As the above table reflects, whether calculated on a FIFO or LIFO basis, Sokolowski has larger losses than both competing movants *combined* when calculated with reference to the proper Class Period alleged in the *Bousso* Action, the only sufficiently noticed action.  Although Tagawa incurred the second-largest loss after Sokolowski, as discussed in detail below, Tagawa fails to satisfy Rule 23's adequacy requirement, which mandates denial of his motion, irrespective of his claimed financial interest in this litigation.  Accordingly, Sokolowski clearly possesses the largest financial interest in this litigation within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff.

---

[3] As a threshold matter, for the reasons stated in his moving brief (*see* Dkt. No. 26 at 1 n.1, 6-7) and *infra* at pp. 5-9, Sokolowski respectfully submits that the Court should assess the competing movants' respective financial interests with reference to the Class Period alleged in the first-filed *Bousso* Action, rather than the improperly expanded class period alleged in the late-filed *Tagawa* Action.

[4] Although the competing movants did not provide a loss estimate calculated on a FIFO or LIFO basis with reference to the originally pled Class Period, for comparative purposes, Sokolowski's counsel have calculated the competing movants' approximate FIFO and LIFO losses with reference to the *Bousso* Action's Class Period pursuant to the same methodology that Sokolowski used to calculate his own FIFO and LIFO losses with reference to that Class Period.  *See* Declaration of Steven J. Toll in Further Support of Motion ("Toll Suppl. Decl."), Exs. A-B.

In addition to his significant financial interest, Sokolowski also strongly satisfies Rule 23's typicality and adequacy requirements.  Sokolowski's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003); *Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 U.S. Dist. LEXIS 12004, at *5 (M.D.N.C. Feb. 15, 2008).  Additionally, Sokolowski's significant losses give him a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, he is aware of no conflict between his interests and those of the Class, and he has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class.  *See Cable & Wireless*, 217 F.R.D. at 376; *Microstrategy*, 110 F. Supp. 2d at 435-36.  Further demonstrating his adequacy, Sokolowski has submitted a detailed Declaration providing the Court with information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class.  *See* Dkt. No. 27-4 ¶¶ 1-8, 10-12.

In stark contrast, Tagawa is inadequate under Rule 23 and thus ineligible for appointment as Lead Plaintiff, irrespective of his financial interest with reference to either of the alleged class periods in the Related Actions, because certain of his papers are either false or else contain glaring errors.  Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions.  *See, e.g.*, *Rodriguez v. Draftkings Inc.*, No. 21 Civ. 5739 (PAE), 2021 U.S. Dist. LEXIS 219489, at *15-16, *25 (S.D.N.Y. Nov. 12, 2021) (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative

3

class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 U.S. Dist. LEXIS 10269, at *9 (S.D. Cal. Jan. 22, 2019) (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23).  Here, Tagawa's Certification, in which he swore under penalty of perjury that he accurately "set forth" his Class Period transactions in Spire Global securities (Dkt No. 21-2 at *2 ¶ 4), purportedly lists in a chart of transactions appended to it (the "Transaction Chart"), *inter alia*, the number of Spire Global shares that he purchased and sold at specified prices on various dates before the Company effected a one-for-eight ("1:8") reverse stock split on August 31, 2023,[5] while noting that these share amounts *and* share prices were "*[n]ot* adjusted for [the] 1:8 reverse stock split on August 31, 2023." Dkt. No. 21-2 at *3 (emphasis added).  However, Tagawa's loss chart exhibit (the "Loss Chart"), which details Tagawa's calculation of his claimed losses, lists the *same* number of shares purchased and sold on these *same* dates at *different* specified prices, while noting that both the share amounts *and* share prices for these transactions *were* "[a]djusted for 1:8 reverse stock split on August 31, 2023." Dkt. No.

---

[5] *See Spire Global Effects 1-For-8 Reverse Stock Split*, Spire Global (Aug. 30, 2023, 4:05 PM EDT), https://ir.spire.com/news-events/press-releases/detail/189/spire-global-effects-1-for-8-reverse-stock-split ("[T]he 1-for-8 reverse stock split . . . will become effective on August 31, 2023 . . . . The purpose of the 1-for-8 reverse stock split is to increase the per share closing price of the Company's Class A common stock . . . . At the effective time of the reverse stock split, Spire stockholders will receive one new share of Company Class A or Class B common stock for every eight shares of Class A or Class B common stock held, as applicable.").

21-3 at *2.  Accordingly, at least one of the following two scenarios must be true: (i) Tagawa's Transaction Chart is incorrect, rendering his sworn Certification false; and/or (ii) the Loss Chart is incorrect and Tagawa has incorrectly calculated his claimed losses.  Regardless of which scenario, if not both scenarios, is true, these errors are sufficient to call into question the integrity of Tagawa's entire submission to the Court and plainly disqualify him from serving as a fiduciary and representative on behalf of the Class.

For the reasons set forth herein, Sokolowski respectfully submits that the Court should grant his motion in its entirety and deny the competing motions.

## ARGUMENT

### I.   THE COURT SHOULD ASSESS FINANCIAL INTEREST WITH REFERENCE TO THE ORIGINALLY PLED CLASS PERIOD IN THE *BOUSSO* ACTION

As a threshold matter, Sokolowski respectfully submits that the Court should assess the competing movants' respective financial interests with reference to the Class Period alleged in the first-filed *Bousso* Action, rather than the improperly Expanded Class Period alleged in the *Tagawa* Action.  While courts generally use the longest alleged class period, "[t]here is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they have the largest financial interest."  *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010); *see also Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (recognizing that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination"); *Villare v. Abiomed, Inc.*, No. 19 Civ. 7319 (ER), 2020 U.S. Dist. LEXIS 114684, at *11-13 (S.D.N.Y. June 29, 2020) (recognizing same and rejecting longer class period alleged in later-filed action, in part, because "there is a risk that the longer class period is a product of gamesmanship" given that

5

movant expanded the class period at the eleventh hour and, "but for the expanded period, his loss would plummet"); *Luongo v. Desktop Metal, Inc.*, No. 1:21-cv-12099-IT *et al.*, 2022 U.S. Dist. LEXIS 119570, at *5-8 (recognizing same and rejecting longer class period alleged in a later-filed action "for purposes of determining the lead plaintiff in the consolidated action" (internal quotation marks and citation omitted)); *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559, at *7-8 n.2 (N.D. Cal. Apr. 28, 2016) (recognizing same and rejecting longer class period alleged in later-filed action). Moreover, courts are "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *12 (S.D.N.Y. Apr. 5, 2016); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (finding significant "additions [to pleadings in a PSLRA action following an initial complaint] make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice" of the initial complaint).

Bousso filed his complaint on August 20, 2024, alleging that the Defendants made false and/or misleading statements between March 6, 2024 and August 14, 2024, inclusive (*i.e.*, the Class Period). *See generally* Dkt. No. 1. The same day, counsel for Bousso issued the statutory Notice to the Class (*see* Dkt. No. 27-3), thus triggering the PSLRA's sixty-day notice period within which prospective Class members could seek appointment as lead plaintiff in this litigation. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Fifty-five days later (*i.e.*, after approximately **90%** of the sixty-day statutory notice period had already passed), and just five business days before the October 21, 2024 motion deadline, Tagawa filed his own complaint, alleging an expanded class period beginning on May 11, 2022, roughly twenty-two months (or nearly **two years**) before the start date

6

of the original Class Period, and ending on August 27, 2024, roughly two weeks after the end of the original Class Period.  *See Tagawa* Action, Dkt. No. 1 ¶ 1.  Tagawa's counsel published notice advising Spire Global investors of the Expanded Class Period at 12:18 a.m. EDT on October 15, 2024—*fifty-six* days into the sixty-day statutory notice period.  *See* Toll Suppl. Decl., Ex. C.

Given the timing of the filing of the *Tagawa* Complaint, it is highly doubtful that any meaningful number of Spire Global investors learned of the Expanded Class Period prior to the October 21, 2024 motion deadline and more doubtful still whether any had sufficient time before the motion deadline to consider and make an informed decision as to whether, in light of the Expanded Class Period, they wished to seek appointment as Lead Plaintiff.  Moreover, considered *in toto*, the circumstances of Tagawa's class period expansion smack of gamesmanship.  Conspicuously, Tagawa's claimed investment losses under the Expanded Class Period are $149,470.[6]  *See* Dkt. No. 21-3.  Under the original Class Period, however, his losses are only approximately *$29,285*.  *See id.*; *see also* Toll Suppl. Decl. Ex. A.  More than *80%* of Tagawa's claimed investment losses were thus incurred in connection with his transactions in Spire Global securities during the approximate twenty-two-month period by which he expanded the Class Period.  Respectfully, Tagawa's conduct suggests a deliberate effort to seize control of this litigation by manufacturing a massive financial interest, at the eleventh hour, without meaningful notice to other Class members.  Sokolowski respectfully submits that the Court should not reward such gamesmanship by accepting Tagawa's Expanded Class Period.  *See Ragan*, 2021 U.S. Dist. LEXIS 238168, at *19 n.4 (rejecting longer class period where, *inter alia*, "[movant] appears to have engaged in . . . gamesmanship" because "the only reason it appears to have waited until the

---

[6] As discussed in detail in Section III.B., *infra*, errors in Tagawa's motion papers cast doubt on the accuracy of this figure.

day before the lead plaintiff motions were due to file its complaint and issue a PSLRA notice was to make it more difficult for others to compete with it to be lead plaintiff"); *Maliarov*, 2016 U.S. Dist. LEXIS 46082, at *11-12 (finding movant inadequate where he engaged in gamesmanship by apparently strategically "fil[ing] his lawsuit alleging . . . additional facts on the last day for potential class members to file a lead plaintiff motion" and that such actions raised the "specter of gamesmanship" as he would not be a lead plaintiff contender otherwise); *see also Luongo*, 2022 U.S. Dist. LEXIS 119570, at *5-8 (recognizing "[t]here is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest" and rejecting longer class period alleged in later-filed action "for purposes of determining the lead plaintiff in the consolidated action" (internal quotation marks and citation omitted)).

At minimum, if the Court chooses to assess the competing movants' respective financial interests with reference to the Expanded Class Period, Sokolowski respectfully submits that counsel for Tagawa should be required to re-issue notice to afford Spire Global investors sufficient time to consider and make an informed decision as to whether they wish to seek appointment as Lead Plaintiff. "[C]ourts have held that republication is warranted where, in light of changes in either or both the class period or the nature of the claims asserted, it is 'likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice.'" *Hachem*, 2018 U.S. Dist. LEXIS 62278, at *4-6 (quoting *Kaplan*, 947 F. Supp. 2d at 367); *see also Luongo*, 2022 U.S. Dist. LEXIS 119570, at *8 (requiring republication of notice for investors who purchased relevant securities during later-filed action's expanded class period and "find[ing] . . . that the class period relevant for purposes of determining the lead plaintiff in the consolidated action is" the initial shorter class period); *In re Akorn, Inc. Sec. Litig.*, No. 1:15-cv-01944, Dkt.

8

Nos. 51 at *1 (N.D. Ill. June 15, 2015) (slip op.) (requiring republication of notice and extending deadline for 60 days where notice of expanded class period was filed late in the original notice period for making motions).

## II.     THE COURT SHOULD APPOINT SOKOLOWSKI AS LEAD PLAINTIFF

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Grad v. Ironnet, Inc.*, No. 1:22-cv-00449 (RDA/JFA), 2022 U.S. Dist. LEXIS 125880, at *9-10 (E.D. Va. July 15, 2022); *Chamblee v. Terraform Power, Inc.*, No. PX 16-981, 2016 U.S. Dist. LEXIS 98619, at *4-5 (D. Md. July 28, 2016); *Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303, 2017 U.S. Dist. LEXIS 103799, at *8-9 (M.D.N.C. July 5, 2017).  Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the class's interests.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Sokolowski.

### A.     Sokolowski Has the Largest Financial Interest

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  *Id.* § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating who has the "largest financial interest," courts in this District, the Fourth Circuit, and around the country recognize that the amount of financial loss is the most significant factor to be considered.  *See, e.g.*, *Grad*, 2022 U.S. Dist. LEXIS 125880, at *7-8 (equating financial interest with economic loss); *Microstrategy*, 110 F. Supp. 2d at 434, 436 (same); *E.spire*, 231 F.R.D. at 212-13 (same); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D.

9

421, 511 (E.D. Pa. 2005) (finding the amount of the financial loss is "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Under the foregoing analysis, with reference to the proper Class Period alleged in the *Bousso* Action, the only sufficiently noticed action, no competing movant seeking appointment as Lead Plaintiff in this litigation has a larger financial interest than Sokolowski. Here, as the chart at p. 2 reflects, Sokolowski has incurred investment losses of approximately $34,874 calculated on a FIFO basis, or $36,768 calculated on a LIFO basis, in connection with his Class Period transactions in Spire Global securities—more than both competing movants ***combined*** when calculated with reference to the originally pled Class Period. While Tagawa incurred the second-largest loss after Sokolowski ($29,284 calculated on a FIFO basis, or $29,285 calculated on a LIFO basis), as discussed in detail below, Tagawa fails to satisfy Rule 23's adequacy requirement, which mandates denial of his motion irrespective of his financial interest in this litigation under any class period. Sokolowski thus plainly possesses the largest financial interest in this litigation among the competing movants.

**B.      Sokolowski Satisfies the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of this litigation—and thus being the statutorily presumed "most adequate plaintiff" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—Sokolowski has plainly made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Grad*, 2022 U.S. Dist. LEXIS 125880, at *9-10; *Chamblee*, 2016 U.S. Dist. LEXIS 98619, at *4-5; *Hirtenstein*, 2017 U.S. Dist. LEXIS 103799, at *8-9.

First, Sokolowski's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because his claims are based on the same legal theory and arise from the same events and

course of conduct as the Class's claims. *See Cable & Wireless*, 217 F.R.D. at 376; *Johnson*, 2008 U.S. Dist. LEXIS 12004, at *5. Sokolowski alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Spire Global. Additionally, Sokolowski, like other Class members, purchased or otherwise acquired Spire Global securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Spire Global's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *Cable & Wireless*, 217 F.R.D. at 376.

Second, Sokolowski satisfies the adequacy requirement of Rule 23(a)(4) because his significant financial interest gives him a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, he is aware of no conflict between his interests and those of the Class, and he has selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Cable & Wireless*, 217 F.R.D. at 376; *Microstrategy*, 110 F. Supp. 2d at 435-36. Sokolowski has further demonstrated his adequacy by submitting with his motion papers a detailed Declaration that provides information about himself, including his investment experience, and that attests to, *inter alia*, his understanding of the significance of his motion and the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, as well as his readiness to shoulder these responsibilities on behalf of the Class. *See* Dkt. No. 27-4 ¶¶ 1-8, 10-12.

11

Accordingly, for all the foregoing reasons, Sokolowski has plainly made a *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *Grad*, 2022 U.S. Dist. LEXIS 125880, at *9-10; *Chamblee*, 2016 U.S. Dist. LEXIS 98619, at *4-5; *Hirtenstein*, 2017 U.S. Dist. LEXIS 103799, at *8-9.

\* \* \* \*

Because Sokolowski has the largest financial interest in the relief sought by the Class and otherwise satisfies Rule 23's applicable requirements, he is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To overcome the strong presumption favoring his appointment as Lead Plaintiff, the PSLRA requires *"proof"* that Sokolowski is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## III.  THE COMPETING MOTIONS SHOULD BE DENIED

### A.  No Competing Movant Has a Larger Financial Interest than Sokolowski with Reference to the Appropriate Class Period

As discussed further in Section II.A., *supra*, no competing movant has a larger financial interest in this litigation than Sokolowski when calculated with reference to the Class Period alleged in the *Bousso* Action, the only sufficiently noticed action. Accordingly, it is self-evident that no other movant can satisfy the PSLRA's first criterion for appointment as Lead Plaintiff. This fact alone mandates denial of the competing motions.

### B.  Errors and/or Falsities in Tagawa's Motion Papers Render Him Inadequate Under Rule 23

Unrelated to his financial interest, Tagawa is inadequate under Rule 23 because his motion papers include multiple significant errors and/or falsities. *See, e.g.*, *Rodriguez*, 2021 U.S. Dist. LEXIS 219489, at *15-16, *25 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative

12

class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Tomaszewski*, 383 F. Supp. 3d at 414 (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *Camp*, 2019 U.S. Dist. LEXIS 10269, at *9 (significant errors in transactions records and loss calculations prohibit a movant from satisfying Rule 23's adequacy and typicality requirements); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *27-28 n.8, *30 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *Lako v. Loandepot, Inc.*, No. 8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063, at *12-13 (C.D. Cal. May 2, 2022) (expressing "serious concerns about [movant] . . . and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses").

Here, the Transaction Chart appended to Tagawa's sworn Certification—which Tagawa attested to being an accurate record of his class period transactions in Spire Global securities, under penalty of perjury (*see* Dkt. No. 21-2 at *2 ¶ 4)—purports to list, *inter alia*, the number of Spire Global shares that Tagawa purchased and sold at specified prices on various dates prior to a 1:8

reverse stock split that the Company effected on August 31, 2023. *See id.* at *3. Specifically,

Tagawa's Transaction Chart appears, in relevant part, as follows:

**Class Period 05/11/22 - 08/27/24**

| PURCHASES | | | | | SALES | | | |
|---|---|---|---|---|---|---|---|---|
| Date ** | Shares | Share Price | | | Date ** | Shares | Share Price | |
| 08/23/22 | 3,000 | $1.3573 | * | | 08/26/22 | 3,000 | $1.3836 | * |
| 09/02/22 | 5,000 | $1.3180 | * | | 09/27/23 | 173 | $4.9700 | |
| 09/05/22 | 80,000 | $1.3700 | * | | 07/08/24 | 2,359 | $10.5000 | |
| 10/13/22 | 3,500 | $1.0100 | * | | 07/11/24 | 5,000 | $10.8919 | |
| 09/28/23 | 500 | $5.0000 | | | 07/12/24 | 1,000 | $11.1906 | |
| 09/29/23 | 1,000 | $5.0000 | | | 07/12/24 | 1,000 | $11.1522 | |
| 10/10/23 | 970 | $4.1461 | | | 08/16/24 | 1,000 | $6.4000 | |
| 08/07/24 | 1,000 | $10.9900 | | | 08/16/24 | 12,000 | $6.4000 | |
| 08/08/24 | 1,000 | $10.2854 | | | | | | |
| 08/08/24 | 1,000 | $9.8000 | | | | | | |
| 08/08/24 | 1,000 | $9.8000 | | | | | | |
| 08/09/24 | 5,000 | $10.1200 | | | | | | |

\* Not adjusted for 1:8 reverse stock split on August 31, 2023.
\*\* Trade dates are according to Plaintiff's time zone, JST.

*Id.* As the Transaction Chart reflects, Tagawa attested under penalty of perjury that he purchased

3,000 shares on August 23, 2022 at $1.3573 per share, 5,000 shares on September 2, 2022 at $1.318

per share, 80,000 shares on September 5, 2022 at $1.37 per share, and 3,500 shares on October 13,

2022 at $1.01 per share, as well as sold 3,000 shares on August 26, 2022 at $1.3836 per share

(collectively, the "Pre-Reverse Split Transactions"), and that these transactions were purportedly

"*[n]ot* adjusted for [the] 1:8 reverse stock split on August 31, 2023." *Id.* (emphasis added).

However, when accounting for these same transactions in his Loss Chart to calculate his losses

under the Expanded Class Period, Tagawa lists the *same* number of shares purchased and sold for

these *same* transactions at *different* specified prices, while noting that the share amounts *and* share

prices *were* "[a]djusted for [the] 1:8 reverse stock split on August 31, 2023." Dkt. No. 21-3 at *2.

Specifically, Tagawa's Transaction Chart appears, in relevant part, as follows:

14

**Class Period 05/11/22 - 08/27/24**

| | Date | Shares | Share Price | | Amount Paid | | Date | Shares | Share Price | | Amount Received |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **PURCHASES** | | | | | | **SALES** | | |
| Pre-Class Held | | | | | | | | | | | |
| Class Period Purchases | 08/23/22 | 3,000 | $10.8584 | * | $32,575.20 | | 08/26/22 | 3,000 | $11.0688 | * | $33,206.40 |
| | 09/02/22 | 5,000 | $10.5440 | * | $52,720.00 | | 09/27/23 | 173 | $4.9700 | | $859.81 |
| | 09/05/22 | 80,000 | $10.9600 | * | $876,800.00 | | 07/08/24 | 2,359 | $10.5000 | | $24,769.50 |
| | 10/13/22 | 3,500 | $8.0800 | * | $28,280.00 | | 07/11/24 | 5,000 | $10.8919 | | $54,459.50 |
| | 09/28/23 | 500 | $5.0000 | | $2,500.00 | | 07/12/24 | 1,000 | $11.1906 | | $11,190.60 |
| | 09/29/23 | 1,000 | $5.0000 | | $5,000.00 | | 07/12/24 | 1,000 | $11.1522 | | $11,152.20 |
| | 10/10/23 | 970 | $4.1461 | | $4,021.72 | | 08/16/24 | 1,000 | $6.4000 | | $6,400.00 |
| | 08/07/24 | 1,000 | $10.9900 | | $10,990.00 | | 08/16/24 | 12,000 | $6.4000 | | $76,800.00 |
| | 08/08/24 | 1,000 | $10.2854 | | $10,285.40 | | | | | | |
| | 08/08/24 | 1,000 | $9.8000 | | $9,800.00 | | | | | | |
| | 08/08/24 | 1,000 | $9.8000 | | $9,800.00 | | | | | | |
| | 08/09/24 | 5,000 | $10.1200 | | $50,600.00 | | | | | | |
| Post Class Purchases | | | | | | | Post Class Sales | | | | |

\* Adjusted for 1:8 reverse stock split on August 31, 2023.

*Id.* As the Loss Chart reflects, the Pre-Reverse Split Transactions *were* purportedly "[a]djusted for [the] 1:8 reverse stock split on August 31, 2023", meaning that both the share amounts *and* share prices for these transactions should differ from the Transaction Chart appended to his Certification.[7] *Id.* However, as reflected above, the Loss Chart appears to have only adjusted the Pre-Reverse Split Transactions' share prices to account for the 1:8 reverse stock split, by multiplying the relevant share prices for these transactions as they appear in the Transaction Chart by eight, without similarly adjusting these transactions' share amounts, which presumably should have been divided by eight—assuming the Transaction Chart and its listed share prices are accurate. *Id.* If the information in the Transaction Chart is, in fact, accurate, then Tagawa should have accounted for purchases of 375 (rather than 3,000) shares on August 23, 2022 at $10.8584 per share; purchases of 625 (rather than 5,000) shares on September 2, 2022 at $10.544 per share; purchases of 10,000 (rather than 80,000) shares on September 5, 2022 at $10.96 per share; purchases of 437.5 (rather 3,500) shares on October 13, 2022 at $8.08 per share; and sales of 375 (rather than 3,000) shares on August 26, 2022 at $11.0688 per share. If this is the case, then

---

[7] To properly adjust his Pre-Reverse Split Transactions to account for the 1:8 reverse stock split, Tagawa should have multiplied these transactions' share prices by eight *and* divided the number of shares purchased and sold by eight. *See supra* n.4.

Tagawa's losses under the Expanded Class Period actually amount to only approximately $37,007 (rather than his claimed $149,470 loss), meaning that the measure of his claimed financial interest in this litigation was artificially inflated by approximately *304%*.  *See* Toll Suppl. Decl., Ex. D.

It is unclear whether the Loss Chart's share amounts or share prices for the Pre-Reverse Split Transactions are incorrect, or whether the Transaction Chart's share amounts or share prices for these same transactions are incorrect, or whether both of these errors occurred in combination. It *is* clear, however, that at least one of these scenarios must be true.  Either: (i) the Transaction Chart appended to Tagawa's Certification is incorrect, rendering his Certification, sworn to under penalty of perjury, false; and/or (ii) the Loss Chart is incorrect and Tagawa has incorrectly calculated his claimed losses.  Neither scenario bodes well for Tagawa's readiness to serve as a class representative in a complex securities class action.

Sokolowski respectfully urges the Court not to treat the foregoing issues as minor or clerical errors.  This litigation is a complex securities class action, and the Court-appointed Lead Plaintiff will be required to diligently review all significant filings and supervise the efforts of counsel.  The fact that, at the earliest stage of this litigation, Tagawa's motion papers are already riddled with material errors, including a false Certification and/or miscalculated losses, should not give the Court confidence that Tagawa is prepared to serve as a fiduciary to the Class in this litigation.  *See Rodriguez*, 2021 U.S. Dist. LEXIS 219489, at *15-16, *25 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place").

16

**CONCLUSION**

For the foregoing reasons, Sokolowski respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Sokolowski as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated:  November 4, 2024                                Respectfully submitted,

                                          **COHEN MILSTEIN SELLERS**
                                          **& TOLL PLLC**

                                          */s/ Steven J. Toll*
                                          Steven J. Toll (Va. Bar No. 15300)
                                          Daniel S. Sommers
                                          (*pro hac vice* application forthcoming)
                                          S. Douglas Bunch
                                          (*pro hac vice* application forthcoming)
                                          1100 New York Avenue, N.W. Suite 500
                                          Washington, D.C. 20005
                                          Telephone: (202) 408-4600
                                          Facsimile: (202) 408-4699
                                          stoll@cohenmilstein.com
                                          dsommers@cohenmilstein.com
                                          dbunch@cohenmilstein.com

                                          *Counsel for Lead Plaintiff Movant Wojciech*
                                          *Sokolowski and Proposed Liaison Counsel for the*
                                          *Class*

                                          **POMERANTZ LLP**
                                          Jeremy A. Lieberman
                                          (*pro hac vice* application forthcoming)
                                          J. Alexander Hood II
                                          (*pro hac vice* application forthcoming)
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016
                                          Telephone: (212) 661-1100
                                          Facsimile: (917) 463-1044
                                          jalieberman@pomlaw.com
                                          ahood@pomlaw.com

17

*Counsel for Lead Plaintiff Movant Wojciech Sokolowski and Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Wojciech Sokolowski*

18