**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| MICHAL BOUSSO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPIRE GLOBAL, INC., PETER PLATZER, and LEONARDO BASOLA,<br><br>Defendants. | Case No. 1:24-cv-01458-MSN-WEF<br><br>**REPLY IN SUPPORT OF MOTION TO CONSOLIDATE THE RELATED ACTIONS, APPOINT KOHEI TAGAWA AS LEAD PLAINTIFF AND APPROVE THE SELECTION OF LEAD COUNSEL** |
| KOHEI TAGAWA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPIRE GLOBAL, INC., PETER PLATZER, THOMAS KRYWE, and LEONARDO BASOLA,<br><br>Defendants. | Case No. 1:24-cv-01810-MSN-LRV |

## I.    PRELIMINARY STATEMENT

The PSLRA requires a specific process for selecting lead plaintiffs. Courts must first identify the plaintiff with the largest financial stake in the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This plaintiff is then presumed to be the most adequate plaintiff, provided the movant meets the typicality and adequacy requirements of Rule 23(a). Once established, the presumption cannot be overturned by comparing the adequacy or typicality of other potential lead plaintiffs. Instead, the presumption in favor of Tagawa, the investor with the largest relative loss of all other lead plaintiff movants, $37,006.93,[1] may be rebutted only upon proof that the presumptively most adequate plaintiff does not satisfy the adequacy or typicality requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

In their response briefs, competing movants Sokolowski and Bousso offer a host of creative financial interest metrics and adequacy challenges in their attempt to unseat Tagawa as the presumptive lead plaintiff. But application of the PSLRA's mandate and relevant case law makes evident that these arguments are baseless, and that Tagawa, the most adequate plaintiff, should be appointed.

## II.    ARGUMENT

**A.    Mr. Tagawa Claims the Largest Financial Interest in the Relief Sought by the Class**

While the PSLRA does not explicitly define "financial interest," "[c]ourts typically use net loss when determining which movant has the greatest financial stake in the litigation." *DeLuca v. Instadose Pharma Corp.*, 2022 WL 3020417, at *3 (E.D. Va. July 29, 2022). Where there are

---

[1] As explained *infra* at p. 9, Mr. Tagawa's counsel made an inadvertent error in Mr. Tagawa's previously filed loss chart which originally reflected losses of $149,470. The amended Loss Chart correcting this error is filed here as Exhibit 1 to the Reply Declaration of Wayne G. Travell ("Travell Reply Decl.").

multiple alleged class periods, it is axiomatic that "[f]or the purpose of calculating losses in determining the proper lead plaintiff in securities class actions, courts use the most inclusive class period." *Hedick v. Kraft Heinz Co*., 2019 WL 4958238, at *5 (N.D. Ill. Oct. 8, 2019); s*ee also, Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 2016 WL 1625774, at *4 (N.D. Tex. Apr. 25, 2016) (adopting longest class period); *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) ("Courts have almost universally held that the longest, most inclusive class period should be used to determine which lead plaintiff movant has the largest financial interest in the relief sought by the class.") (collecting cases).

This "approach respects the PSLRA's command to identify 'the broadest, most inclusive potential class.'" *Oakland Cnty. Voluntary Emps. Beneficiary Ass'n v. Generac Holdings Inc.*, 2023 WL 9511520, at *3 (E.D. Wis. May 30, 2023); *see also*, *Takara Trust v. Molex Inc*., 229 F.R.D. 577, 579 (N.D. Ill. 2005); *In re Fuwei Films Sec. Litig*., 247 F.R.D. 432, 437 (S.D.N.Y. 2008); *see In re Mills Corp. Sec. Litig*., 2006 WL 2035391, at *3 (E.D. Va. May 30, 2006)

Here, there is no genuine dispute that Tagawa claims the largest net loss on his transactions in Spire Global securities during the longest alleged class period of May 11, 2022 and August 27, 2024, as pled in the *Tagawa* Complaint.

| Movant | Net Losses Claimed During Longest Class Period |
|---|---|
| Tagawa | **$37,006.93[2]** |
| Bousso | **$23,130.89** |
| Sokolowski | **Unknown** |

---

[2] The competing movants are in near agreement with this calculation. Bousso calculates Tagawa's losses as just $6 more at $37,012 (ECF No. 30 at 5), while Sokolowski reports Tagawa's losses as $36,768.  ECF No. 31 at 16. The minimal difference in their calculations is likely attributable to rounding of numbers.

As reflected in the table above, Sokolowski's financial interest for the *Tagawa* class period is presently unknown. While Sokolowski has provided his trades and loss calculations for the shorter five-month *Bousso* class period (ECF No. 27-1, 27-2), Sokolowski has not provided his trades for the longer *Tagawa* class period, other than to identify that as of March 6, 2024, which falls within the later half of the longer *Tagawa* class period, Sokolowski held 3,684.922415 Spire shares. ECF No. 27-1.[3] Nor does Sokolowski identify his losses during the *Tagawa* class period. ECF 27, 31.

### 1.    The Court Should Reject Bousso's Attempt to Devalue Net Losses

In accordance with applicable authorities, in his opening brief, Bousso stressed his net losses to calculate his financial interest. ECF No. 23 at 6. In his response, only after realizing that he did not possess the largest loss, Bousso switches gears to advocate that the Court should elevate the importance of alternative *Lax-Olsen* factors. ECF No. 30 at 5-6. Bousso provides no reason for changing course, and courts routinely reject such eleventh-hour shifts in strategy as gamesmanship. *See, e.g., Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (denying motion by movant who "[t]ellingly . . . made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only after [a competing movant] came forward with larger LIFO losses."); *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (noting that movants focused "exclusively" on "losses" in their motions and rejecting attempt to switch metrics).

---

[3] For the shorter *Bousso* class period, Sokolowski claims his FIFO losses are $34,854 and LIFO losses are $36,768. The difference is because Sokolowski attempts to match sales of his 3,684.922415 Spire shares held prior to the *Bousso* class period.

Bousso argues that the Court should place additional weight to (i) net shares purchased, which calculates how many shares were retained by a movant at the end of the class period, and (ii) net funds expended. ECF No. 30 at 5-6.  But the net shares approach relies on the assumption that there was a constant fraud premium throughout the class period. *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (noting that the net shares approach "gets into trouble" if the fraud premium "varied over the course of the class period"). Here, there were at least two disclosures involving improper accounting with varying share price drops during the class period (on August 15, 2024 and August 27, 2024), undermining any assumption that the fraud premium was constant throughout the class period. *See*, *Khan v. ChargePoint Holdings, Inc.*, 2024 WL 2261948, at *3 (N.D. Cal. May 16, 2024) (rejecting net share approach in case involving multiple corrective disclosures).

As to net funds expended, courts only give this factor weight where the investor was a "net seller[/net gainer]," and therefore "has arguably profited more from the fraud than it has been injured, possibly reducing its incentive to litigate." *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814 (N.D. Cal. Feb.15, 2011). Here, Tagawa is not a net seller/net gainer, and thus this factor should be given minimal if any consideration and losses should remain determinative. *See, Reinschmidt v. Zillow, Inc.*, 2013 WL 1092129, at *2 (W.D. Wash. Mar. 14, 2013) (rejecting retirement funds' contention that their higher values for net shares purchased and net funds expended tipped the financial interest calculus in their favor, where individual investor claimed larger LIFO loss).

Bousso's authorities are unconvincing. In *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017), the candidate with the largest loss "sold out its position [stock] during the class period," which negated the candidate's

-4-

loss since the investor could not prove loss causation. Here, there is no question that Tagawa held his shares through the first alleged disclosure. Similarly, in *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014), the lead plaintiff candidates employed varying calculation methods from brief to brief, making it impossible for the court to compare their losses fairly. This is not the case here, as the competing movants agree in principle on the movants' respective net losses.

Likewise, in *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007), the court held that the first three factors outweighed a "slight difference" in loss, since the non-prevailing movant suffered a loss that was only 2% greater than that of the prevailing movant. Likewise, in *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006), the court found that an institutional investor would be "the more adequate and preferable" of two plaintiffs, in spite of it having suffered "slightly lower" losses (i.e., 17%). However, in that case the Court found that "the relative magnitude of each of the parties' losses [was] fuzzied by various competing estimates, unclear methodology, and myriad proposed class periods." *Id*. The *Doral* court concluded that "[g]iven the probable margins of error involved in the various damages estimates," the two remaining investors under consideration had "roughly equal damages," and thus the institutional investor should be appointed lead plaintiff. *Id*. Here, as Bousso has conceded, Tagawa has clearly suffered a greater financial loss, as Tagawa's losses are 59% greater than Bousso's making his authorities distinguishable.

Finally, in his response, Bousso now suggests the Court should calculate losses by excluding "in-and-out transactions." ECF 30 at 4-5. But even if the Court were to adopt this novel loss calculation approach, the disparity between Tagawa's and Bousso's losses would significantly increase, as Tagawa's losses would be greater than Bousso's by nearly 125%.

| Movant | Losses Claimed During Longest Class Period Excluding In-and-Out Transactions |
|---|---|
| Tagawa | $51,856 |
| Bousso | $23,131 |
| Sokolowski | Unknown[4] |

### 2.    Sokolowski's Attempt to Apply the Shorter Class Period Fails

In an attempt to leapfrog Tagawa, Sokolowski continues to argue that the Court should ignore the well-pled allegations of the *Tagawa* complaint and evaluate movant losses based on the shorter five-month class period in the *Bousso* action. ECF No. 31 at 10. But even Bousso, who filed the initial complaint, has repeatedly disavowed the shorter *Bousso* class period and advocates that, in accord with overwhelming case law, the longest class period should apply at the lead plaintiff stage in this case. ECF 23 (adopting *Tagawa* class period for purposes of financial interest); 30 at 4, n.3 ("When evaluating financial interest, Court's typically use the longer class period" (citing *Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, 2021 WL 6072812, at *4 (D. Md. Dec. 23, 2021))).[5]

Moreover, Sokolowski does not contend that the *Tagawa* class period is implausible. To the contrary, in his opening brief, Sokolowski agreed that the longer *Tagawa* class period is factually supported based on the Company's disclosures made on August 27, 2024 - after the initial *Bousso* complaint was filed on August 20 – announcing the need to restate its previously issued

---

[4] Bousso calculates Sokolowski's losses excluding in-and-out transactions as $36,797. But since Sokolowski does not identify his trades between May 11, 2022 through March 6, 2024, this loss figure is not reliable.

[5] *See also, Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (noting that applying the longest alleged class period at the lead plaintiff stage "makes some sense, because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had the opportunity to develop the record").

financial statements beginning with its financial statements for the quarter ended March 31, 2022, originally released on May 11, 2022. ECF 26 at 4.

Instead, Sokolowski's sole basis for arguing that the *Bousso* class period should apply here is his quibble that Tagawa filed his complaint a week before the lead plaintiff deadline. ECF No. 31 at 7. Sokolowski claims that the timing of filing of Tagawa's complaint somehow deprived investors of making an informed decision as to whether, in light of the expanded class period, they wished to seek appointment as Lead Plaintiff. ECF No. 31 at 7.

This argument is legally meritless. Pursuant to the PSLRA, courts credit allegations filed within the sixty-day notice period. *See Plumbers & Pipefitters Local 562*, 256 F.R.D. at 624.  This is so even when the complaint is filed within days of or on the sixty-day "notice period" deadline. *See, e.g., Hom v. Vale, S.A.*, 2016 WL 880201, at \*4 (S.D.N.Y. Mar. 7, 2016) (finding original notice adequate despite subsequent actions filed one week before lead plaintiff deadline expanding class period more than sixteen months); *Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at \*2 (S.D.N.Y. Dec. 6, 2011) (notice adequate despite new complaint filed the same date as the lead plaintiff deadline, which expanded the class period by nearly two years, as it named same defendants, legal theories, and securities).

The argument also fails on the record.  On August 20, 2024, upon the filing of the *Bousso* Action, Bousso's counsel issued notice alerting potential class members as to the allegations therein and the upcoming lead plaintiff deadline. ECF No. 27-3. This notice alerted potential class members as to the accounting fraud claims levied against Defendants. *Id*. After the August 27, 2024 disclosures, investors like Tagawa had the opportunity to file a complaint or make a motion to expand the class period consistent with those disclosures. Going above and beyond the notice requirements set forth in the PSLRA, additional notice was issued upon filing of the *Tagawa*

Action, which alerted potential Class members as to the expansion of the claims advanced against Defendants and reiterated the October 21 lead plaintiff deadline. ECF No. 32-3. Tellingly, no investor has sought to intervene or otherwise complain of inadequate notice. Accordingly, any argument that absent class members were not provided with sufficient notice of the proceedings is wrong.

Sokolowski further claims that "the circumstances of Tagawa's class period expansion smack of gamesmanship." ECF No. 31 at 7. This is baseless. The record instead shows that Tagawa properly sought to expand the Class Period to hold Defendants liable for the entirety of their fraud and maximize investors' potential recovery.

To the contrary, Sokolowski's ploy to shorten the class period itself appears self-serving. If successful, it "would have the effect of reducing the class size and limiting the potential amount of damages." *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014). "It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff." *Id.* "This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [the movants] lead plaintiff." *Id.*

Finally, Sokolowski's alternative request that the Court require republication of notice pursuant to the PSLRA and reopen of lead plaintiff motion practice, is baseless. As Sokolowski's own authorities recognize, courts typically disfavor republication since it delays prosecution of the merits. ECF No. 31, citing *Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *1 (S.D.N.Y. Apr. 12, 2018) (recognizing that republication of notice is disfavored). As evinced by the cases cited by Sokolowski (ECF No. 31 at 8), courts have generally only required republication where the new complaint alters dramatically the gravamen of the claims alleged against Defendants. *See*,

*Hachem*, 2018 WL 1779345, at \*2 (the initial notice had a shorter class period and focused solely on GE's Power segment underperformance, while the subsequent complaint extended the class period by nearly two years and added allegations about GE's LTC business); *Luongo v. Desktop Metal, Inc.*, 2022 WL 2532498, at \*2 (D. Mass. July 7, 2022) (original class action was shorter and challenged Defendants' statements about acquired entity's FDA compliance, while newer action alleged longer class period and introduced new legal theory challenging the company's due diligence in acquiring the entity)  Here, Tagawa's complaint centers on the same alleged accounting fraud alleged in the *Bousso* action and challenges the same nature of misrepresentations. *See*, *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at \*4 (N.D. Cal. Jun. 15, 2015) (declining to reopen lead plaintiff process where the amended complaint "still center[ed] on the same factual scenario" as the original complaint and any new claims and defendants "relate[d] to the same misrepresentations" as those in the original complaint).

**B.      Sokolowski's Adequacy Attack Against Tagawa Is Baseless**

Sokolowski makes much ado about the error made in Tagawa's preliminary loss chart prepared by counsel, causing Tagawa to overstate his reported net losses. But this was an inadvertent error made by Tagawa's counsel (not Tagawa) as a result of failing to account properly for the 1:8 reverse stock split that the Company effected on August 31, 2023. Specifically, while Tagawa's counsel properly adjusted Tagawa's pre-reverse split transactions' share prices to account for the 1:8 reverse stock split by multiplying the relevant share prices for these transactions by eight, in the preliminary loss chart, Tagawa's counsel failed to similarly adjust these transactions' share amounts by dividing by eight. While regrettable, this type of innocent error is not of the severity to disqualify a presumptive lead plaintiff.  *See*, *Pack v. LuxUrban Hotels Inc.*, 2024 WL 3046258, at \*6 (S.D.N.Y. June 18, 2024) (rejecting argument that movant "must be disqualified because it supposedly miscalculated its approximate losses in its initial motion" as

"unpersuasive."); *Ferrari v. Gisch*, 225 F.R.D. 599, 604 (C.D. Cal. 2004) ("The relatively minor miscalculations do not serve as a basis for disqualifying [presumptive lead plaintiff movants]."); *In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 351 (S.D. Cal. 1998) ("The Court, however, does not find the McKitty Group's computational and typographical errors to be so substantial as to overcome the statutory presumption in favor of the McKitty Group.").

Sokolowski's cited cases which all deal with false sworn PSLRA certifications are all distinguishable since Tagawa's PSLRA certification is unquestionably accurate. Moreover, in each of the cases, the movant not only submitted false PSLRA certifications, but also engaged in trading or conduct that raised additional adequacy concerns. *See*, *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at \*6 (S.D.N.Y. Nov. 12, 2021) (movant submitted false sworn PSLRA certification containing numerous and varied errors and was a day trader and short seller that likely could not prove loss causation); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (movant's sworn certifications and declarations contained numerous errors, specifically overstating his total losses by combining trades and averaging prices, and misrepresenting purchase dates); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at \*3 (S.D. Cal. Jan. 22, 2019) (movants submitted false PSLRA certification, had "significant errors in the transaction records" and "failed to include any basic details about himself, including where he lives or who he is specifically in his motion."); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at \*8, n.8 (D.N.J. Sept. 7, 2007) (in addition to submitting a false PSLRA certification that contained numerous errors, including a misleading signature and inaccurate trading data, movant admitted at his deposition that he falsely previously testified to reviewing and authorizing the complaint); *In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, \*2 (N.D. Ill. Jan. 28, 2020) (noting that joint movants "provided virtually no information about" themselves, but also

"revealed a curious trading history with regard to [defendant's] shares that the [movants'] 'pleadings and declarations' did nothing to explain"); *Lako v. Loandepot, Inc*., 2022 WL 1314463, at *6 (C.D. Cal. May 2, 2022) (finding group failed to make a prima facie showing that they satisfied Rule 23's adequacy requirements, reasoning the filing of a joint declaration by the group was not sufficient to demonstrate adequacy and the "sparse information regarding the individual members of the group," "boilerplate assurances that its members would work together to oversee the litigation," and failure to "provide any information regarding whether the members had a pre-litigation relationship" "cast doubt" on the group's "ability to fairly and adequately protect the interests of the class and vigorously prosecute the action").

## C.    Hagens Berman Should Be Appointed Lead Counsel

Tagawa's choice in counsel, Hagens Berman, is reasonable.  The firm easily satisfies statutory requirements for lead class counsel and would fairly and adequately represent the class. Hagens Berman has also previously prosecuted a number of similar securities fraud class actions and has been successful. Because Hagens Berman has demonstrated its competency to represent the class, the Court should appoint Hagens Berman as lead counsel.

## III.    CONCLUSION

For the reasons discussed above and in the opening brief (ECF No. 20), Movant respectfully requests that the Court consolidate the related actions, appoint him Lead Plaintiff, and approve the selection of Hagens Berman as Lead Counsel for the Class.

Dated: November 12, 2024                    **HIRSCHLER FLEISCHER, PC**


By:    */s/ Wayne G. Travell*
Wayne G. Travell (Bar No. 22400)
Allison P. Klena (Bar No. 96400)
1676 International Drive, Suite 1350
Tysons, VA 22102
Telephone: (703) 584-8903

-11-

Facsimile: (703) 584-8901
Email: wtravell@hirschlerlaw.com
       aklena@hirschlerlaw.com

*Liaison Counsel for Plaintiff and Movant Kohei Tagawa*

Lucas E. Gilmore*, pro hac vice application pending*
(Cal. Bar No. 250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email:  lucasg@hbsslaw.com

*Attorneys for Plaintiff and Movant Kohei Tagawa*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November, 2024, a true and correct copy of the

foregoing document was filed electronically with the clerk of this Court using the CM/ECF system,

in accordance with Local Rules, which will send a notice of electronic filing to all registered users.


    */s/ Wayne G. Travell*

Wayne G. Travell (Bar No. 22400)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, VA 22102
Telephone: (703) 584-8903
Facsimile: (703) 584-8901
Email: wtravell@hirschlerlaw.com

*Liaison Counsel for Plaintiff and Movant Kohei Tagawa*

17853397.1  041292.00006

-13-