UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| *In re Spire Global, Inc. Securities Litigation* | Case No. 1:24-cv-01458-MSN-WEF |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .......................................................................................................... 3

    A.    Spire Is A Satellite Company That Sells Data Using A Subscription Based Business Model ...................................................................................................... 3

    B.    Defendants Improperly Recognized Revenue From Space Services Contracts ............................................................................................................. 4

    C.    Defendants Issued Materially Misleading Statements Related To The Space Services Contracts ...................................................................................... 5

    D.    Defendants Improperly Failed To Recognize Costs Associated With Research And Development Contracts As Costs Of Revenue .................... 5

    E.    Defendants Issued Materially Misleading Statements Related To The Research And Development Contracts ...................................................... 6

    F.    Defendants Have Admitted Spire Improperly Recognized Revenue And Failed To Properly Record Costs ............................................................ 6

ARGUMENT ............................................................................................................................. 7

    I.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION ...................................................................................................... 7

    II.    THE AMENDED COMPLAINT ALLEGES A STRONG INFERENCE OF SCIENTER ........................................................................................... 8

    A.    Legal Standard ..................................................................................... 8

    B.    The Nature And Significance Of The Company's GAAP Violations Support A Strong Inference Of Scienter ...................................................... 9

        1.    The GAAP Violations Allowed Premature Or Inappropriate Recognition Of Revenue And Overstated Gross Margin ............. 10

        2.    The GAAP Violations Occurred Over A Prolonged Period ......... 13

    C.    The Misstatements Concern The Company's Core Operations Which Supports A Strong Inference of Scienter .................................................. 13

    D.    The Manner And Statements In Which The Individual Defendants Held Themselves Out To Be Knowledgeable About Space Services Supports Scienter. ............................................................................................... 17

i

E.    The Facts And Circumstances Of Defendant Platzer's Removal From His Position As CEO Contributes To A Strong Inference Of Scienter ........... 18

F.    The Company's Admissions Concerning Its Internal Control Deficiencies Support A Finding Of Scienter ................................................... 21

G.    That Defendants Have Delayed Issuing A Restatement And Disclosing The Extent Of Their Misstatements Supports A Finding Of Scienter. ..... 22

H.    The Balance Of Inferences Shows That Defendants Knowingly Or Recklessly Issued Materially Misleading Financial Statements ............... 22

I.    Defendants' Stock Holdings Does Not Outweigh The Alleged Factors... 23

1.    Motive Is Not Required ................................................. 23

2.    Defendants Should Not Be Permitted To Judicially Notice The Exhibits Of Stock Holdings ........................................... 24

3.    If The Court Notices The Exhibits, The Court Should Hold The Motion In Abeyance And Lift The PSLRA Discovery Stay To Allow Plaintiff To Conduct Adequate Discovery........................ 25

4.    Even If The Court Judicially Noticed Exhibits 40-81, Defendants' Stock Purchases Are Irrelevant. .................................. 26

J.    Corporate Scienter May Be Properly Inferred. ........................................ 27

IV.    THE COMPLAINT SUFFICIENTLY PLEADS LOSS CAUSATION .............. 28

V.    THE COMPLAINT ALLEGES §20(a) LIABILITY AGAINST THE INDIVIDUAL DEFENDANTS......................................................... 30

CONCLUSION.................................................................................................... 30

## TABLE OF AUTHORITIES

Other Authorities

2013 WL 1316034 (D. Md. Mar. 28, 2013).................................................................................. 11

744 F.3d ................................................................................................................................ 11, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................. 8

*Barrie v. Intervoice-Brite, Inc.*,
  397 F.3d 249 (5th Cir. 2005) ................................................................................................. 18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................................. 8

*Boykin v. K12, Inc.*,
  54 F.4th 175 (4th Cir. 2022) .................................................................................................. 24

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.,*
  496 F. Supp. 3d 952 (E.D. Va. 2020) ..................................................................... 19, 23, 27

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................................ 28

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
  637 F.3d 435 (4th Cir. 2011) ..................................................................................... 24, 25, 26

*Epstein v. World Acceptance Corp.*,
  203 F. Supp. 3d 655 (D.S.C. 2016)................................................................................. passim

*Firefighters Pension & Ret. Sys. v. Ixia*,
  2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ...................................................................... 15

*Firemen's Ret. Sys. of St. Louis v. Telos Corp.*,
  2023 WL 1512207 (E.D. Va. Feb. 1, 2023)...................................................................... 12, 23

*Gonzalez v. Cano Health, Inc*.,
  2024 WL 4415216 (S.D. Fla. Oct. 4, 2024)........................................................................... 13

*I.B.E.W. v. Ltd. Brands, Inc.,*
  788 F. Supp. 2d 609 (S.D. Ohio 2011) .................................................................................. 27

*In re Akorn, Inc. Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ..................................................................................... 19

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ..................................................................................................... 27

*In re Baan Co. Sec. Litig.*,
  103 F. Supp. 2d 1 (D.D.C. 2000)............................................................................................ 11

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004).................................................................................... 27

*In re Diamond Foods, Inc., Sec. Litig.*,
  2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ...................................................................... 12

*In re Genworth Fin. Inc. Sec. Litig.,*
  103 F. Supp. 3d 759 (E.D. Va. 2015) .............................................................................. passim

*In re Hertz Glob. Holdings, Inc.,*
  905 F.3d 106 (3d Cir. 2018).............................................................................................. 17, 20

*In re James River Grp. Holdings, Ltd. Sec. Litig.,*
  2023 WL 5538218 (E.D. Va. Aug. 28, 2023)........................................................................ 14

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................. 11
*In re Medicis Pharm. Corp. Sec. Litig.*,
  689 F. Supp. 2d 1192 (D. Ariz. 2009) .................................................................. 11
*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................. passim
*In re Mut. Funds Inv. Litig.*,
  566 F.3d 111 (4th Cir. 2009) ................................................................................ 30
*In re NVIDIA Corp. Sec. Litig.,*
  768 F.3d 1046 (9th Cir. 2014) .............................................................................. 20
*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014) ..................................................................... 21
*In re Red Hat, Inc. Sec. Litig.*,
  2006 WL 8563014 (E.D.N.C. May 12, 2006) ....................................................... 11
*In re SCB Computer Tech., Inc. Sec. Litig.*,
  149 F. Supp. 2d 334 (W.D. Tenn. 2001) ............................................................... 11
*In re Scholastic Corp. Sec. Litig.,*
  252 F.3d 63 (2d Cir. 2001) .................................................................................... 22
*In re Sinclair Broadcast Grp., Inc. Sec. Litig.*,
  2020 WL 571724 (D. Md. Feb. 4, 2020) .............................................................. 16
*In re Triangle Capital Corp. Sec. Litig.*,
  988 F.3d 743 (4th Cir. 2021) ..................................................................... 19, 20, 24
*In re: Ebix, Inc. Sec. Litig.*,
  898 F. Supp. 2d 1325 (N.D. Ga. 2012) ................................................................. 21
*Inc. Sec. Litig.*,
  418 F.3d 379 (4th Cir. 2005) ................................................................................ 25
*Institutional Invs. Grp. v. Avaya, Inc.,*
  564 F.3d 242 (3d Cir. 2009) .................................................................................. 15
*Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
  432 F. Supp. 2d 571 (E.D. Va. 2006) .............................................................. 16, 26
*Jackson Inv. Grp., LLC v. Thomas,*
  325 F. Supp. 3d 1334 (N.D. Ga. 2017) ........................................................... 11, 26
*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ................................................................................ 28
*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  2016 WL 3981236 (D.S.C. July 25, 2016) ............................................... 13, 17, 18
*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................. 2, 24
*Kiken v. Lumber Liquidators Holdings, Inc.*,
  155 F. Supp. 3d 593 (E.D. Va. 2015) ................................................. 15, 17, 27, 30
*Knurr v. Orbital ATK Inc.*,
  272 F. Supp. 3d 784 (E.D. Va. 2017) .................................................................... 23
*Maiman v. Talbott,*
  2010 WL 11421950 (C.D. Cal. Aug. 9, 2010) ...................................................... 25
*Masterson v. Commonwealth Bankshares, Inc.,*
  2 F. Supp. 3d 824 (E.D. Va. 2014) ....................................................................... 12

iv

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) ............................................................................... 31
*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ............................................................................................... 7
*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
   455 F. App'x 10 (2d Cir. 2011) .......................................................................... 15
*Plymouth Cty. Ret. Sys. v. Evolent Health, Inc.*,
   2021 WL 1439680 (E.D. Va. Mar. 24, 2021) ................................................ 16, 23
*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
   75 F.4th 232 (4th Cir. 2023) ........................................................................ 20, 23
*SEC v. Lucent Techs., Inc.*,
   363 F. Supp. 2d 708 (D.N.J. 2005) ..................................................................... 22
*Singer v. Reali*,
   883 F.3d 425 (4th Cir. 2018) ..................................................................... 7, 8, 28, 29
*Smith v. Pinion*,
   2013 WL 3895035 (M.D.N.C. July 29, 2013) ................................................. 11, 25
*Stein v. Bridgepoint Edu., Inc.*,
   2020 WL 3250596 (S.D. Cal. June 15, 2020) ...................................................... 13
*Steinberg v. Schmitt Indus., Inc.*,
   2024 WL 1007879 (D. Or. Feb. 2, 2024) ........................................................ 11, 20
*Tchatchou v. India Globalization Cap. Inc.*,
   2021 WL 307415 (D. Md. Jan. 29, 2021) ............................................................ 24
*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ..................................................................................... 7, 8, 22, 23
*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   672 F. Supp. 2d 596 (S.D.N.Y. 2009) .................................................................. 21
*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018) ............................................................... 20
*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ............................................................................... 17
*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) ........................................................................ passim

## STATUTES

15 U.S.C. § 78u–4(b)(4) ............................................................................................ 28

## RULES

Fed. R. Civ. P. 12 ...................................................................................................... 7, 25

v

Lead Plaintiff Michal Bousso ("Bousso" or "Plaintiff") respectfully submits this memorandum of law in opposition to the Defendants'[1] Motion to Dismiss Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

Defendants made false and misleading statements regarding one of Spire's primary sources of revenue and engaged in generally accepted accounting principle ("GAAP") violations which allowed the premature and improper recognition of revenue. *See* ¶¶3-4, 43-52. Indeed, Defendants have *admitted* that the Company's revenue recognition and cost recognition practices resulted in false financial statements. ¶¶33, 35. As such, Defendants do not challenge that they made false and misleading statements.

The Complaint outlines that this was done knowingly and recklessly. In fact, the Individual Defendants falsely denied that the issue existed when they were *specifically, directly and repeatedly asked* about the manner in which the Company recognized revenue for Space Services contracts. Moreover, Defendants' false financial statements concerned a core aspect of the Company, one which the Individual Defendants and analysts alike cited as a key driver of success. It is hard to believe that the Company and its executives were not aware of accounting practices that impacted a core aspect of its business that was being asked about so often.

---

[1]    Citations to "¶__" refer to paragraphs in Lead Plaintiff's Consolidated Amended Complaint (Dkt. No. 57) ("CAC" or the "Complaint"). Citations to "Def. Br." refer to Defendants' memorandum in support of their motion to dismiss (Dkt. No. 62), and citations to "Ex." refer to exhibits attached to the Declaration of Jeffrey P. Justman (Dkt. No. 62-1).

All capitalized terms herein have the meanings ascribed to them the Complaint, unless otherwise stated. Defendants are Peter Platzer ("Platzer"), Thomas Krywe ("Krywe"), and Leonardo Basola ("Basola") (collectively, "Individual Defendants") and Spire Global, Inc. ("Spire" or the "Company," and together with Individual Defendants, the "Defendants").

That Defendants were making these false statements with knowledge that they were false (or at least recklessly) is further supported by facts including: (1) the nature and significance of the Company's GAAP violations, which allowed for the premature or inappropriate recognition of revenue and overstated key metrics, over a period of longer than two years; (2) that Space Services is a large segment of the business and the key differentiator among Spire's peers; (3) the manner and statements in which the Individual Defendants held themselves out to be knowledgeable about Space Services and its accounting practices; (4) the facts and circumstances of Defendant Platzer's removal as CEO; (5) the Company's admissions concerning its internal control deficiencies; and (6) the Company's delay issuing a restatement and disclosing the extent of their misstatements.

Faced with this reality, Defendants resort to trying to improperly turn the instant motion into a summary judgment motion, without permitting Plaintiff appropriate discovery, by improperly using extrinsic documents for the truth of the matter asserted therein. Amazingly, Defendants have sought judicial notice of ***91 different exhibits*** and have sought to use them all for the truth of the matter asserted – even documents that were not cited to or referenced in the Complaint at all. This abuse of the judicial notice doctrine is part of a "concerning pattern in securities cases" in which defendants are "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). As the Ninth Circuit cautioned:

> If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief.

*Id.* at 998-99.

Here, Defendants are attempting to do exactly this – "present their own version of the facts at the pleading stage." For example, ignoring that a financial motive is not required to plead

2

scienter, Defendants argue that the use of *forty-one exhibits for the truth of their contents* "prove" the Individual Defendants are net purchasers which they allege alone "negates any inference of scienter." Def. Br. at 27-28 (citing Exs. 40-91). This argument is improper without discovery, which Plaintiff has not yet been afforded.

Similarly, Defendants ask the Court to make premature loss causation determinations without the benefit of a full factual record or expert discovery. While Defendants do not contest that Plaintiff has sufficiently alleged that there is loss causation for at least one corrective disclosure – which is enough to make a prima facie case – Defendants want the Court to find that other corrective disclosures are inactionable. This is clearly inappropriate and premature at this stage. And even if it were not, the Complaint adequately pleads a theory which ties Defendants' slow-walked trickle of restatement disclosures together under a common theory.[2]

Defendants' Motion cannot defeat Plaintiff's well-pled claims. As such, it should be denied in its entirety.

## STATEMENT OF FACTS

This securities class action is brought on behalf of persons and entities that purchased or otherwise acquired Spire securities between May 11, 2022 and August 14, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

### A.    Spire Is A Satellite Company That Sells Data Using A Subscription Based Business Model

Spire is a satellite company that designs, builds, and operates a constellation of multipurpose satellites to collect and process precise maritime, aviation, and weather data. ¶¶2, 18.

---

[2]    Additionally, Defendants make numerous factual claims about the nature of the restatement for which the veracity is hard to assess without the actual restatement. It is improper for Defendants to use their own slow-rolling of the restatement to create an unsupported narrative of the facts.

Spire sells access to this data via subscriptions and customized datasets to customers ranging from commercial shipping operations to government contractors. ¶¶18, 22. Spire's offerings include "Space Services," which is an end-to-end offering that leverages Spire's existing operational infrastructure to deploy customers' own applications and sensors into space. ¶21. During the Class Period, Space Services was estimated to account for 25-29% of the Company's revenue. ¶121.

Government contracts represent about 42% of the Company's revenue during the Class Period. ¶23. These included research and development ("R&D") contracts for technology developments that were funded or co-funded by government agencies. ¶37.

**B.      Defendants Improperly Recognized Revenue From Space Services Contracts**

Accounting Standards Codification ("ASC") rules are the primary source of authoritative GAAP for nongovernmental entities. ASC 606 governs the recognition of revenue from contracts with customers. ¶45. The "core principle" of ASC 606 "is that an entity recognizes revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services." ¶45. Otherwise stated, a company may not recognize revenue for "activities that [it] must undertake to fulfill a contract unless those activities transfer a good or service to a customer." ¶47.

Thus, Spire cannot recognize revenue for preparatory "pre-space" activities needed to set up a satellite. ¶35. It can only recognize revenue once the satellite is launched and data delivery has begun, as that is the only distinct performance obligation contemplated by the contracts. ¶37. However, as the Company later admitted, it had recognized revenue for "pre-space mission activities" associated with Space Services contracts despite the reality that such activities would not benefit the customer because the data delivery subscription could not yet commence. ¶¶35, 37-38, 48.

**C.    Defendants Issued Materially Misleading Statements Related To The Space Services Contracts**

Throughout the Class Period, Spire alleged it derived revenue from its Space Services contracts in the same manner as its other data access contracts, *i.e.* it recognized revenue when data access was transferred, when in fact, it was recognizing revenue for pre-space activities. *See e.g.* ¶76 (Platzer describing Space Services, "it really is a subscription to a capability on orbit that is collecting data, and that is what the customer pays us for"); ¶¶72-77, 122.  The Company also asserted incorrectly that its financial statements were "prepared in accordance" with GAAP and "fairly present[ed] in all material respects, [its] financial position, results of operations and cash flows for each of the periods presented herein." ¶¶113, 114.

Throughout the Class Period, the Company emphasized that its subscription-based revenue business model was at the *core* of the Company's success while failing to disclose that the Company was prematurely recognizing Space Services revenue. *See, e.g.*, ¶28 (Platzer attributing the Company's success to "space services solutions, a subscription-based business model, and a focus towards profitability."); ¶¶54-71 (reporting falsely inflated financial results).

**D.    Defendants Improperly Failed To Recognize Costs Associated With Research And Development Contracts As Costs Of Revenue**

ASC 730 governs the accounting and reporting of research and development costs. ¶49. ASC 730 requires that costs related to a contractual arrangement must be recognized as costs of revenue, not research and development. ¶51. That is, costs like direct labor or materials cannot be recorded as research and development costs, but must be recognized as costs of revenue. ¶51.  For example, under ASC 730, if a satellite has already been sold to a customer, it would be inappropriate to record the cost of a $100,000.00 piece of satellite testing equipment as a research and development expense because that expense already generated revenue. ¶¶51-53. If a company fails to recognize costs associated with research and development contracts as costs of revenue, it

understates costs of revenue and overstates its gross margins. ¶52. This is because gross margins represent the percentage of revenue remaining after subtracting the cost of revenue. ¶24.

However, as the Company later admitted, Spire failed to properly report costs associated with the research and development contracts under the Company's "cost of revenue." ¶37. This was a violation of GAAP. ¶¶49-53. Instead, the Company had reported these costs as part of operating expenses, thereby artificially overstating its gross margin. ¶¶37, 52.

### E.     Defendants Issued Materially Misleading Statements Related To The Research And Development Contracts

Throughout the Class Period, Spire issued inflated, inaccurate financial results reporting its supposed gross margins, cost of revenue and research and development costs. ¶¶54-71 (financial results); ¶¶80-89 (cost of revenue); ¶¶90-99 (research and development costs); ¶¶100-109 (gross margins). Spire touted it gross margin improvement was the result of merely "leveraging infrastructure costs" or its "innovative business model." ¶¶29, 62, 64, 66 (Company reporting gross margin improvement demonstrates success in leveraging infrastructure costs across solutions); ¶31 (Platzer stating "our high gross margins and growth rates are…a reflection of an innovative business model,…given that all our products are sold as a subscription.").

### F.     Defendants Have Admitted Spire Improperly Recognized Revenue And Failed To Properly Record Costs

At the end of the Class Period, Spire admitted its financial statements were inaccurate. ¶¶3-6, 33-42, 116-117. Specifically, on August 14, 2024, after the market closed, the Company disclosed it was "reviewing its accounting practices and procedures with respect to revenue recognition" regarding Space Services contracts and "related internal control matters." ¶33. As a result, the "Company may be required to restate or revise its previously issued financial statements" and "financial measures such as gross profit could also be impacted." ¶¶5, 33, 117.

This caused the Company's share price to fall $3.41, or 33.56%, to close at $6.75 per share on August 15, 2024, on unusually heavy trading volume. ¶¶5, 37.

Thereafter, on August 27, 2024, the Company confirmed that its previously issued financial statements during the Class Period could no longer be relied on and would need to be restated because "revenue and cost recognition timing for pre-space mission activities was incorrect." ¶¶6, 35. Then, on November 4, 2024, Spire disclosed that it also needed to reclassify "the full costs associated with the R&D Contracts" "from 'research and development' to 'cost of revenue' within gross profit on the face of the consolidated statements of operations." ¶¶6, 37.

Shortly after this admission, Defendant Platzer was removed as CEO, and Defendant Basola announced his intent to resign as CFO. ¶41. The Company has yet to file the required restatement. ¶42.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION

To state a Section 10(b) and Rule 10b–5 claim, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).[3] When ruling on a "Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The court must also "construe them in the light most favorable to [the plaintiff]." *Singer v. Reali*, 883 F.3d 425, 429 (4th Cir. 2018).

---

[3]     As Defendants challenge only scienter and loss causation, any challenge to the remaining elements is deemed waived. *See* Fed. R. Civ. P. 12(g).

To avoid dismissal, a complaint need only "contain sufficient factual matter . . . to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff need only plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable." *Id*. at 678. The court "must consider the complaint in its entirety." *Tellabs*, 551 U.S. at 310. A court should deny a motion to dismiss when the complaint plausibly articulates the circumstances constituting fraud. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.   THE AMENDED COMPLAINT ALLEGES A STRONG INFERENCE OF SCIENTER

### A.   Legal Standard

To demonstrate scienter, a plaintiff must show that the defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs,* 551 U.S. at 319.  The inference of scienter need only be "as strong" as any competing inference. *Id.* at 326 ("the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?").[4] The inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences,'" it need only be "just as likely." *Id.* at 324.

Courts must "consider the scienter allegations holistically and accord those allegations the inferential weight warranted by the context and common sense." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). A complaint's "[a]llegations of reckless conduct can satisfy the level of scienter necessary to survive a motion to dismiss." *Singer*, 883 F.3d at 429. In securities fraud cases "it is seldom if ever possible to prove the state of a defendant's mind by

---

[4]   Unless otherwise stated, all internal citations and quotation marks are omitted, and all emphasis in bold and italics is added.

direct evidence," and "accordingly, finders of fact have almost always had to rely on circumstantial evidence." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 630 (E.D. Va. 2000).

Here, as set out below, Plaintiff alleges a strong inference of scienter based on the following: (1) the nature and significance of the Company's GAAP violations, wherein Defendants overstated revenue and gross margin for over two years; (2) the nature of the misstatements concern the Company's most profitable business and a large percentage of its revenue (i.e., core operations); (3) the manner and statements in which Individual Defendants held themselves out to be knowledgeable about Space Services and its accounting practices; (4) the circumstances under which Defendant Platzer, the founder of the Company and its longstanding CEO, was removed shortly after Spire announced the need for a restatement; (5) the admitted substantial internal control deficiencies which Defendants claimed to remediate, suggesting they were attentive to the deficiencies and its potential impact on financial results; and (6) despite announcing nearly six months ago that a restatement was necessary, Defendants have yet to file corrected financial statements disclosing the extent of their misstatements.

### B. The Nature And Significance Of The Company's GAAP Violations Support A Strong Inference Of Scienter

When analyzing scienter in the context of GAAP violations, "the magnitude of the restated financials and the pervasiveness and repetitiveness of [the company's] GAAP violations; the simplicity of the accounting principles violated . . . ; and the importance of the contracts involved" serve to "amplify the inference of scienter." *MicroStrategy*, 115 F. Supp. 2d at 636. GAAP violations provide a "significant inferential weight in the scienter calculus." *Id.* at 635 (scienter alleged with respect to premature revenue recognition). Here, the nature and significance of Defendants' GAAP violations, which allowed for the premature or inappropriate recognition of revenue and overstated key metrics over a period of longer than two years, supports scienter.

9

**1.    The GAAP Violations Allowed Premature Or Inappropriate Recognition Of Revenue And Overstated Gross Margin**

Defendants' violations of GAAP permitted the premature recognition of revenue from Space Services contracts and enabled Spire to appear more profitable than it was.  ¶¶45-48. Specifically, Spire recognized revenue for "pre-space mission activities" associated with Space Services contracts even though such activities would not benefit the customer until after a satellite had launched and data could be transferred to the customer. ¶¶35, 48. Therefore, Defendants' accounting failures resulted in premature recognition of revenue on Space Service contracts by recognizing revenue before it was earned. ¶¶3, 32. This is such an unreasonable methodology that it gives rise to an inference of scienter. *See MicroStrategy,* 115 F. Supp. 2d at 637–38 (explaining that recognizing revenue for contracts which are not executed or where obligations were unfulfilled strongly supports scienter as "violations of simple rules are obvious"). Similarly, Defendants' incorrect categorization of R&D costs enabled Spire to overstate its gross margin. ¶¶49-53. Given that Defendants touted Spire's "high gross margins" or "gross margin improvement" quarter over quarter as reflective of Spire's "innovative business model," investors and analysts understood it was an important metric. ¶¶29, 31, 62-67, 68-69, 77; *see In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 784 (E.D. Va. 2015) (that "the Individual Defendants knew that investor and analyst attention was acutely focused on the Company's LTC business during the Class Period" supported scienter).

Defendants discount these allegations, claiming that premature revenue recognition is merely a timing issue. Def. Br. 16-17. In support, Defendants rely on the opinion of a single analyst

10

Def. Br. at 16.[5] Even if that analyst's opinion could be properly considered, multiple courts have found "violations involving the premature or inappropriate recognition of revenue suggest a conscious choice to recognize revenue in a manner alleged to be improper and may therefore support a stronger inference of scienter." *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 21 (D.D.C. 2000); *MicroStrategy,* 115 F. Supp. 2d at 637–38 (premature recognition of revenue weighed heavily in favor of strong inference of scienter); *In re Red Hat, Inc. Sec. Litig.*, 2006 WL 8563014, at *5 (E.D.N.C. May 12, 2006) (scienter found where company "improperly recognized revenue before it was earned"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) (reasoning that "books do not cook themselves"). Further, Defendants ignore that Plaintiffs claims also concern inflation of the key gross margin metric, which is unrelated to a timing issue.

Defendants' authority that premature revenue recognition is just a timing issue is distinguishable. *Yates* concerned a "challenging new accounting standard" about which there was an "honest disagreement" about application. *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 at 883 (4th Cir. 2014). Here, the rules are neither new nor challenging. Similarly, this matter is unlike *Proter v. Medifast, Inc.,* where the restatement concerned periodic review of liability balances and premature revenue recognition. 2013 WL 1316034, at *5, *14 (D. Md. Mar. 28, 2013).[6] Here, the

---

[5]    Defendants cannot use extraneous evidence judicially noticed in this way. *See Smith v. Pinion*, 2013 WL 3895035, at *1 (M.D.N.C. July 29, 2013) (denying judicial notice of report which "consists of the author's opinions and [] conclusions").

[6]    Defendants' out-of-Circuit authorities on this issue are equally unavailing as they lack the key fact pattern here: Defendants prematurely recognized revenue and inflated key metrics in an admitted violation of GAAP. *See Steinberg v. Schmitt Indus., Inc.,* 2024 WL 1007879, at *17 (D. Or. Feb. 2, 2024) (restatement *decreased* expenses); *Jackson Inv. Grp., LLC v. Thomas,* 325 F. Supp. 3d 1334, 1351 (N.D. Ga. 2017) (misclassification of price of certain 'plans' was not shown to be a GAAP violation); *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1207 (D. Ariz. 2009) (accounting errors resulted in an *understatement* of net revenue); *In re SCB Computer*

Company also recharacterized costs associated with research and development contracts as operating expenses, thereby allowing Spire to appear more profitable. In any event, the restatement has not yet been filed, so it remains to be seen whether the financial misstatements are purely a timing issue.

Moreover, contrary to Defendants' argument, Spire's auditor's opinion does not exonerate Defendants. Def. Br. at 28; *see Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 672 (D.S.C. 2016) ("audit opinions are insufficient on their own to counter the existence of scienter."). Regardless, the merits of any affirmative defense of good faith reliance on auditors cannot be resolved until after discovery. *In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at *8 (N.D. Cal. Nov. 30, 2012) ("In order to know how much reasonable reliance should be accorded the audit opinion, we will eventually have to evaluate what communications passed between the company and the auditor as well as what, if anything, was hidden from the auditor."); *Masterson v. Commonwealth Bankshares, Inc.*, 2 F. Supp. 3d 824, 834 n.7, 835 (E.D. Va. 2014) (holding "good faith" is an affirmative defense inappropriate for resolution on a motion to dismiss absent "conclusive proof").

Finally, the purported complexity of ASC 606 does not undermine scienter. *Cf.* Def. Br. 29. Indeed, scienter is afforded a strong inference where, like here, "the accounting principle violated [] boils down to the well-worn adage, 'Don't count your chickens before they hatch.'" *MicroStrategy*, 115 F. Supp. 2d at 638. Defendants' authorities do not even weigh the complexity of revenue recognition principles in determining scienter. In any event, those violations were far more complex than this instance. *Firemen's Ret. Sys. of St. Louis v. Telos Corp.*, 2023 WL

---

*Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 351 (W.D. Tenn. 2001) (scienter undermined where allegedly misstated contract revenue was not material).

12

1512207, at *2 (E.D. Va. Feb. 1, 2023) (company mistakenly assumed it was the principal, not agent, in a contract); *Gonzalez v. Cano Health, Inc.*, 2024 WL 4415216, at *2, *9 (S.D. Fla. Oct. 4, 2024) (revenue was variable consideration and dependent on reimbursement by third party payors); *Stein v. Bridgepoint Edu., Inc.*, 2020 WL 3250596, at *11 (S.D. Cal. June 15, 2020) (company failed to assess collectibility on a student-by-student basis). Additionally, Defendants' argument completely ignores the improper accounting of costs associated with research and development contracts, which is not complex because it merely required the Company to match expenses with the revenue it generated.

### 2.    The GAAP Violations Occurred Over A Prolonged Period

That the financial misstatements span a more than two-year period further supports the inference of scienter. ¶35 (announcing restatement of financial reports spanning approximately two years and 5 months); *Genworth*, 103 F. Supp. 3d at 785 ("The fact that Defendants made repeated misrepresentations over the course of a year also suggests a substantial degree of scienter"); *MicroStrategy*, 115 F. Supp. 2d at 636 ("pervasiveness and repetitiveness of [the company's] GAAP violations" serve to "amplify the inference of scienter."). Spire apparently has not reported accurate financial statements throughout nearly its entire existence as a public company, which "suggest[s] an extreme departure from ordinary care." *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at *8 (D.S.C. July 25, 2016) (failure to correctly recognize revenue related to core business practices supported scienter as to senior executives who executed the company's rapid expansion policy).

### C.    The Misstatements Concern The Company's Core Operations Which Supports A Strong Inference of Scienter

Because high-ranking officers are presumed to know facts about the core operations of their company, establishing whether an alleged fraud dealt with the core operations of a business

13

is highly "relevant to the Court's holistic analysis." *Genworth*, 103 F. Supp. 3d at 784 (finding scienter where insurance company understated loss exposure for core business). Here, the core operations doctrine supports a finding of scienter.

First, the contracts represented a proportionally large part of the Company's revenue. Defendants incorrectly recognized revenue for Space Services contracts, which accounted for an estimated 25% of the Company's total revenue by the third quarter of 2022 and 29% by the first quarter of 2024. *See* ¶121 ("analysts estimated that Space Services accounted for as much as 25% of Spire's revenue"); ¶121 ("By June 5, 2024, Craig-Hallum estimated that Space Services accounted "~29% of revenue."). Defendants also incorrectly recognized costs associated with certain government funded contracts, and government contracts accounted for approximately 42% of reported revenue in fiscal 2023. ¶23. This supports a core operations inference. *See In re James River Grp. Holdings, Ltd. Sec. Litig.*, 2023 WL 5538218, at *19 (E.D. Va. Aug. 28, 2023) (core operations allegations supported scienter where misstatements concerned the company's "largest account" which defendants claimed to be watching closely); *Epstein*, 203 F. Supp. 3d at 671 (violation of a "single GAAP rule" probative of scienter where contracts represented up to 25% of the company's portfolio).

Second, the misstatements concern metrics (Space Services and gross margins) which were closely followed by investors and analysts. ¶27 (expected growth was "largely driven by Space Services" and "Spire has by far the highest gross margins within our Space coverage"); ¶30 (noting analysts considered "impressive gross margins" to be "the most important story of the quarter"); ¶25 (noting that analysts directly asked defendants asked management to give "some sense" of Space Services revenue because it "does seem to be a fairly different flavor of revenue."). This supports a core operations inference because it underscores that the metrics were important signs of the Company's business. *See Genworth*, 103 F. Supp. 3d at 784 (that "the Individual Defendants

14

knew that investor and analyst attention was acutely focused on the Company's LTC business during the Class Period" supported scienter); *see also New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 (2d Cir. 2011) (scienter was supported where violations concerned metrics which were key to measuring a company's overall financial performance, and which analysts often inquired upon); *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (analysts focus on issue adds to scienter inference).

Third, "Defendants' repeated public discussion" of the operations at issue as a driver of success "is relevant to their state of mind" and supports the core operations inference. *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 606 (E.D. Va. 2015) (scienter established where defendants repeatedly credited Chinese imports as a key driver of success). Defendants' frequently emphasized the importance of Space Services and gross margins driven by a subscription model. ¶55 (Defendant Krywe attributing quarterly success as "driven by key winds" in space services). The Company specifically noted that Space Services' subscription model was a key driver of success. ¶28 (Platzer attributing the Company's success to "space services solutions, a subscription-based business model, and a focus towards profitability."); ¶31 (Platzer asserting that "our high gross margins and growth rates are not just numbers, they are a reflection of an innovative business model, [] given that all our products are sold as a subscription.").

Defendants baselessly assert that "Space Services *accounting practices*" are not core operations. *See* Def. Br. at 18-19. Their cited authority does not require such a showing. *Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *30-31 (C.D. Cal. Apr. 14, 2015) (at-issue contracts were "less than 20%" of revenue; rejecting plaintiffs' argument that deferred revenue was "core"). Regardless, the Individual Defendants *often* spoke of how their accounting practices, i.e., subscription revenue recognition, was core to the business and "key" to its success. ¶¶25, 76, 77, 122.

15

Even if, as Defendants argue, "actual exposure to the accounting problem" is required (Def. Br. at 20), Plaintiff has established such actual exposure because the Individual Defendants themselves claimed to be familiar with the Space Services accounting practices. ¶¶31, 54, 76 (Platzer); ¶¶31, 67, 69, 77, 78 (Basola); ¶¶55, 57, 61, 63, 65 (Krywe).[7]   Given the specific statements made and purported familiarity with the revenue earned from Space Services contracts, it strains credulity for Defendants to suggest that "the only reasonable inference is that Platzer 'assumed'" that revenue recognition was accurate. Def. Br. at 22. Platzer specifically felt strongly about the Company's accounting practices related to its purported "recurring subscription" accounting. ¶¶25, 122, 123.[8]

---

[7]     This is not improper group pleading. *See* Def. Br. at 21. Plaintiff does not allege that Platzer's own statements are indicative of "scienter in Basola's or Krywe's heads," (Def. Br. at 21) thus Defendants' argument is a strawman. There are facts specific to each Individual Defendant which "plead with particularity the time, place, speaker, and contents of the allegedly false statements." *See MicroStrategy,* 115 F. Supp. 2d at 650, n.57 (where he allegations in the Complaint, are sufficiently particular with respect to each defendant, there is no need "to inquire into whether the so-called 'group pleading doctrine' applies"); *cf. Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571 (E.D. Va. 2006) (pleadings which used only common allegations to imply individual defendants' liability was insufficient) (Def. Br. at 21). Critically, Basola and Krwye are the Chief Financial Officers—whose job it is to know of the Company's accounting of all its revenue-earning businesses—and who proclaimed to be familiar with Space Services accounting.

[8]     Contrary to Defendants' assertion, the allegations by FE1 support an inference of scienter. FE1 alleges a specific instance in which R&D expenses were incorrectly accounted. ¶53. Despite Defendants' attempt to obfuscate the issue, Spire has not filed its restatement, thus the Court cannot conclude that FE1's allegations are "clearly" unrelated to the accounting issue underlying the restatement. Def. Br. at 20 n.2. Moreover, FE1 reported to Chief Accounting Officer Thomas Lim who reported to the Individual Defendants, which is sufficient. *Plymouth Cty. Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *35 (E.D. Va. Mar. 24, 2021) (FE allegations support inference of scienter despite that most had no "direct interaction" with any defendant); *In re Sinclair Broadcast Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *17 (D. Md. Feb. 4, 2020) (FEs describing "widespread understanding" among employees of undisclosed issue supported inference of scienter).

16

Defendants' assertion that scienter is undermined by the magnitude of the restatement (Def. Br. at 19) is unavailing as the precise magnitude of the restatement is unknown. ¶42. However, even a restatement of small magnitude would be supportive of scienter. *Genworth,* 103 F. Supp. 3d at 786 (finding restatement of reserves supported inference of scienter though it represented only 2.84% of total reserves because courts "consider[] the magnitude of the discrepancy" in "the totality of circumstances."). Indeed, Defendants' out of circuit cases found the small magnitude of restatement to be indicative of scienter. *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 116 (3d Cir. 2018) (that income was overstated by at least 10% provided "some" inference of scienter); *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (15% restatement "potentially indicative," but alone insufficient to support scienter).

**D.    The Manner And Statements In Which The Individual Defendants Held Themselves Out To Be Knowledgeable About Space Services Supports Scienter.**

"[T]he most powerful evidence of scienter is the content and context of [defendants'] statements themselves,' and when a defendant is 'specifically asked, directly and repeatedly' about these core operations, denials of any issues can support a strong inference of scienter." *KBC Asset Mgmt. NV,* 2016 WL 3981236, at *9; *Kiken*, 155 F. Supp. 3d at 606 ("Defendants' repeated public discussion of [the operations at issue] is relevant to their state of mind.").

Defendants "repeated public discussions" strongly supports that the Individual Defendants, were aware of the Space Services accounting practices. *Kiken,* 155 F. Supp. 3d at 606.  Throughout the Class Period, the Individual Defendants all claimed to be familiar with the Space Services accounting practices and all claimed that the Company's purportedly successful financial results were driven by strong margins and Space Services performance. ¶¶31, 54, 76 (Platzer); ¶¶31, 67, 69, 77, 78 (Basola); ¶¶55, 57, 61, 63, 65 (Krywe).

17

Defendants were also "specifically asked, directly and repeatedly" about the manner in which the Company accounted for Space Services contracts and yet denied any issue, which supports scienter. *KBC Asset Mgmt. NV*, 2016 WL 3981236, at *9; *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 264 (5th Cir. 2005) ("that the defendants persisted in the incorrect accounting" after it was brought to their attention supported a strong inference of scienter). For example, on May 11, 2022, an analyst suggested Space Services "does seem to be a fairly different flavor of revenue," but Defendant Platzer disagreed and insisted Spaces Services was "a subscription business, just like our other businesses that is focused on delivering our customer's data, just like our other businesses." ¶25.  Again, on March 27, 2023, Defendant Platzer was *directly asked* by analyst to clarify how Space Services could be "considered a subscription recurring revenue," and Defendant Platzer assured investors that customers "don't pay us for anything else" but the data. ¶76 ("[I]t really is a subscription to a capability on orbit that is collecting data, and that is what the customer pays us for."); *see also* ¶122.

Contrary to Defendants' argument that they timely disclosed the accounting problems once they became known and prompt endeavored to correct them in good faith (*See, e.g.*, Def. Br. at 1, 30-36), Defendants were *directly* asked *on multiple occasions* by analyst to confirm that Space Services revenue was subscription based and accounted for at the time of the delivery of data, which provided ample opportunity for Defendants to candidly disclose the revenue recognition practice. Yet they did not, and this supports scienter. *Barrie*, 397 F.3d at 264.

E.      **The Facts And Circumstances Of Defendant Platzer's Removal From His Position As CEO Contributes To A Strong Inference Of Scienter**

Spire announced the "removal" of Defendant Platzer as CEO on December 3, 2024, immediately following its disclosure that it had overstated its revenue for the Space Services segment, understated its costs of revenues, and thereby overstated gross profit.  ¶¶124-125.

18

The temporal proximity of the "removal" of Platzer to the restatement supports scienter. *See Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 965 (E.D. Va. 2020) (resignation of CFO on the same day of disclosure concerning the company's liability contributed to inference of scienter); *see also In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) (CFO resignation announced "in the wake of restatement" reinforced scienter allegations). Further, that Platzer's removal was announced in conjunction with Defendant Basola's announcement he would resign as CFO "once the Company completes its previously disclosed review of certain accounting practices" further supports drawing an inference that Platzer's removal was related to the misstatement and therefore supports scienter. *See Epstein*, 203 F. Supp. 3d at 670 (departure of senior executives in the months following a restatement contributed to inference of scienter).

Defendants argue that Platzer's removal was merely a "role change" and does not support any inference of scienter. Def. Br. at 22. But Defendant Platzer was not merely the appointed CEO, he *co-founded* Legacy Spire in 2012 and served as CEO for well over a decade. ¶124. Yet, mere weeks after the Company announced the restatement, and as it continued to disclose additional bases for restatement, the Company stripped him of the leadership of the Company he founded. Moreover, Defendants are not permitted to present their own version of events that this removal was a "planned transition," when all reasonable inferences must be drawn in *Plaintiff's* favor. *Genworth*, 103 F. Supp. 3d at 769, 776 (holding allegations must be viewed in the light most favorable to the plaintiff and refusing to "engage in a factual dispute at this stage of litigation").

Defendants' cited authorities (Def. Br. at 23) are not persuasive and are readily distinguishable on this point. *Cf. In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 753 (4th Cir. 2021) (removal of management weak indication of scienter without allegations demonstrating the departing executive's contemporaneous knowledge that their previous statements were

19

materially misleading). Here, Plaintiff has indeed made many such allegations. *See* Secs. II. (B)-(J). Defendants' invocation for *Syneos* fails for a similar reason. *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 244 (4th Cir. 2023) ("*post-merger* [pre-disclosure] corporate departures and reshuffling" *alone* did not support scienter where plaintiffs "failed to raise an inference of scienter through other means."). Here, Plaintiff does not present Platzer's departure in isolation, but instead in the context of a wealth of other indications of scienter, including that it occurred *after* disclosure.[9]

Moreover, courts have rejected Defendants' argument that scienter is undermined by a purported lack of "disagreement" when a departure is announced. Def. Br. at 23. See *Epstein,* 203 F. Supp. 3d at 671 (argument that announcement of a resignations reflected "no disagreements" between the parties, was "lacking" as "inadequate to reveal or refute the presence of scienter.").

Finally, Defendants argue that, because Platzer was given a one-time, unspecified "cash bonus" of upon his removal, the inference of scienter is undermined. Def. Br. at 24 (citing Ex. 39). Even if the Court takes judicial notice of Exhibit 39, which it should not, these purported cash bonuses are "contingent upon the closing of the Company's sale of its maritime business" and forfeit if the sale fails or there is a "separation from service." *Id*. This is a *far* cry from a "generous compensation" package which would undermine scienter. *Cf. Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1155 (C.D. Cal. 2018), (annual base salary of $1,000,000 and "the

---

[9]  Defendants' out-of-circuit precedent on this issue is unpersuasive as the cited cases do not evince the close temporal proximity of the removal to the disclosure that this case has. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014) (departure of interim CFO who stayed on after disclosure for over nine months after the disclosure, and chief scientist replaced over a year later, insufficient to support scienter)*; In re Hertz*, 905 F.3d at 118 (non-temporally proximate corporate resignations); *Steinberg,* 2024 WL 1007879 (departures of employees 2-4 years prior to disclosures was insufficient to support scienter).

majority of the benefits [] enjoyed as CEO"), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020) (Def. Br. at 24).

> **F.    The Company's Admissions Concerning Its Internal Control Deficiencies Support A Finding Of Scienter**

Another factor supporting scienter is the admission of multiple weaknesses in Spire's internal controls over financial reporting for more than two years. ¶¶110-114, 127. Throughout the Class Period, Defendants purported to have been in the process of closely monitoring and evaluating the Company's internal control procedures. ¶¶110-114, 128. Specifically, the Company claimed to be remediating its weakness by employing adequate and knowledgeable personnel for accurate financial reporting, including as to revenue recognition. ¶110, 113.

Courts hold that weak internal controls will support an inference of scienter. *Epstein,* 203 F. Supp. 3d at 669 ("red flags to alert senior officers to the unreliability of statements about internal controls and financial information" relevant). The Individual Defendants were, by their own claims, paying attention to internal controls and purportedly remediating deficiencies, yet did not uncover the incorrect revenue recognition. ¶¶110-114, 128; *see Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (awareness of deficient internal controls that could influence financial results supported scienter of GAAP violations).

Defendants argue that Spire's "candid" disclosure of a material weakness weighs against finding of scienter. Def. Br. at 25. But this is undermined by the failure to discover the revenue and cost recognition issues despite Defendants' purported remediation of internal control deficiencies. ¶¶110-114; *see Kiken,* 155 F. Supp. 3d at, 605 (company's lack of internal controls, combined with additional facts, supports a strong inference of scienter); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 633 (S.D.N.Y. 2014) ("A lack of adequate internal controls may support the inference of scienter."); *In re: Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325, 1345 (N.D. Ga. 2012)

21

("serious billing problems" and "internal controls" are "naturally within the purview of the company's top executives" and they had "specific communications . . . regarding these issues" to support scienter).

### G. That Defendants Have Delayed Issuing A Restatement And Disclosing The Extent Of Their Misstatements Supports A Finding Of Scienter.

Defendants admitted the need for a restatement on August 27, 2024, and yet of the date of submission of this pleading, have yet to file one. ¶6, 35, 27, 42. That Defendants have now allowed nearly six months to elapse without disclosing the full extent of the Company's admitted misstatements further tips the balance in favor of a finding of scienter. *MicroStrategy,* 115 F. Supp. 2d at 641 ("attempts at covering-up the truth ... further tip the balance of inferences ... in favor of scienter"); *Epstein,* 203 F. Supp. 3d at 660 (red flags establishing scienter included a disclosure of a material weakness and delays in financial reporting to the SEC); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (scienter evidenced by a delay before taking special charge for returns despite statements that management gave considerable attention to monitoring returns). *See also SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) ("common sense dictates that actions taken after the fraud occurred can be circumstantial evidence that the defendant acted with the requisite state of mind").

### H. The Balance Of Inferences Shows That Defendants Knowingly Or Recklessly Issued Materially Misleading Financial Statements

A complaint is adequate "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Tellabs,* 551 U.S. at 324. If there is any question as to which competing inference is more plausible, a motion to dismiss must be denied. *Id.*

Defendants argue that "even though the Complaint spans 164 paragraphs, there are twelve meager paragraphs that purport to allege any scienter." Def. Br. at 14 (citing only the Plaintiff's

22

"*Additional* Scienter" section (¶¶119-130)). Defendants' approach ignores the Supreme Court's directive in *Tellabs* which held that scienter is not determined by viewing individual allegations in isolation but holistically. *See* 551 U.S. at 309. Defendants do not get to re-write the complaint and pretend that well-pled allegations are different than they are when properly viewed holistically, Plaintiff has adequately pled scienter. *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *36 (E.D. Va. Mar. 24, 2021) (finding scienter established where, although "on the one hand, based upon the facts pleaded in the Second Amended Complaint, there appears to be no motive for fraud" because "[p]laintiffs have made enough of a showing that there was a 'presence of red flags,' . . . which 'provide substantial weight to an inference'" of scienter).

## I.     Defendants' Stock Holdings Does Not Outweigh The Alleged Factors

Defendants argue that the Complaint fails to plead specific facts giving rise to a strong inference of scienter because Plaintiff does not allege a motive for Defendants to commit fraud. Def. Br. at 14-15. This is not persuasive for several reasons.

### 1.     Motive Is Not Required

Contrary to Defendants' argument (Def. Br. at 14-15), motive is not a required. The Supreme Court has clearly decided that "[t]he absence of a motive allegation . . . is not fatal." *Tellabs*, 551 U.S. at 325 (scienter allegations must be considered "collectively"); *see also JELD-WEN,* 496 F. Supp. 3d at 966 (finding scienter plead where financial motives were alleged as "the absence of a motive allegation is not fatal.")

Defendants' invocation that *some* securities cases are anchored in stock sale allegations is ultimately irrelevant. *See* Def. Br. at 14, 31-32. None of Defendants' cited authorities *required* motive but merely *weighed* an absence of motive in the holistic analysis. *Yates*, 744 F.3d at 891 (weighing insider sales amongst factors of scienter); *Knurr v. Orbital ATK Inc.*, 272 F. Supp. 3d 784, 808 (E.D. Va. 2017) (same); *Telos*, 2023 WL 1512207, at *9 (same); *Syneos*, 75 F.4th at 244

(only allegation plaintiffs alleged was a core operations argument related to due diligence); *In re Triangle*, 988 F.3d at 752 (complaint was rife with "omissions and ambiguities" which weighed against scienter, especially because "generalized motive" to attract investors was insufficient); *Boykin v. K12, Inc.*, 54 F.4th 175, 186 (4th Cir. 2022) (only allegation was motive to boost the stock price).

### 2.    Defendants Should Not Be Permitted To Judicially Notice The Exhibits Of Stock Holdings

As Plaintiff has not alleged stock sales, it is improper for Defendants to introduce facts outside the Complaint to manufacture the absence of motive. *See* Def. Br. at 27-28 (citing Exs. 40-91 to argue that Individual Defendants' net acquisitions of Spire stock "negates" scienter).

Judicial notice procedures are limited, and allow a court to take "notice a fact that is not subject to reasonable dispute," only when the fact is "generally known within the court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Zak,* 780 F.3d at 607 (SEC filings could not provide a factual basis for district court's conclusion that no individual corporate officer sold stock during the class period, nor that they purchased the same). Further, even if judicially noticed, "the content of a noticed document may not be used to contradict well-pleaded allegations in the complaint." *Tchatchou v. India Globalization Cap. Inc.*, 2021 WL 307415, at *5 (D. Md. Jan. 29, 2021) (citing *Khoja*, 899 F.3d at 1014 (judicial notice "does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage")).  A court may take notice of what the publicly filed documents state but cannot "consider[ the] contents of a public record as an established fact and as evidence contradicting the complaint." *Zak,* 780 F.3d 597, 605 (4th Cir. 2015); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) (discussing that it is error to take judicial notice of the truth of disputed factual matters).

Among Defendants' *ninety-one* Exhibits for which it improperly seeks judicial notice,[10] Defendants seek to introduce *forty-one* SEC Form 4s to establish Individual Defendants were net acquirers of stock in the Class Period to defeat scienter. Def. Br. 28 (citing Exs. 40-81). The Court cannot take judicial notice of these Exhibits because *Defendants are improperly seeking to introduce them for the truth of the matter asserted. See* Def. Br. at 3 n.1; Exs. 1-91. *Zak,* 780 F.3d at 607 (rejecting judicial notice of Form 4s offered to show individual defendants' stock transactions). Defendants' cited authority states that the Court used the percentages of stock sales that were derived from *the complaint.* Def. Br. 28 (citing *In re PEC Sols. Inc. Sec. Litig.*, 418 F.3d 379, 390 n.10 (4th Cir. 2005)). Here, Plaintiff has not alleged stock sales, and the entry of these exhibits is therefore improper.

**3.    If The Court Notices The Exhibits, The Court Should Hold The Motion In Abeyance And Lift The PSLRA Discovery Stay To Allow Plaintiff To Conduct Adequate Discovery.**

When "matters outside the pleading are presented to and not excluded by the court," a 12(b)(6) motion converts into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Then, both parties must have the opportunity "to present all the material that is pertinent to

---

[10]    None of Defendants' use of their remaining exhibits are proper either. Auditor's reports and analysts' reports are improperly offered to show their financial statements were accurate and revenue recognition is complex. Def. Br. at 5 (citing Ex. 1, 3); Def. Br. at 10 (citing Ex. 31); Def. Br. at 16 (citing Ex. 35); *Smith,* 2013 WL 3895035, at *1 (denying judicial notice of report which "consists of the author's opinions and [] conclusions,"). Defendants submit press releases to dispute that the executive departures were related to the restatement. Def. Br. at 22 n.3 (citing Ex. 37); Def. Br. at 23-24 (citing Ex. 2, 38); Def. Br. at 24 (citing Ex. 39); *E.I. du Pont de Nemours & Co.*, 637 F.3d at 450 ("accepting statements beyond the [complaint] and making inferences on that basis in favor of [defendant] was in error"). Defendants seek submission of annual reports, quarterly reports, and press releases, which are itself alleged to be misleading. *See, e.g.*, Def. Br. at 6-7, (citing Exs. 4-28); *See Maiman v. Talbott*, 2010 WL 11421950, at *1 (C.D. Cal. Aug. 9, 2010) (a court should not take judicial notice of the truth of "public documents filed with the [SEC] in a securities fraud action since the truth of the contents of the SEC reports is typically central to the dispute").

the motion." *Id.*  "Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448–49.

The Court's consideration of the extrinsic evidence contained in Exhibits 1-91, without first converting the Motion to Dismiss into a motion for summary judgment, would tip the scales in Defendants' favor and improperly preclude Plaintiff from conducting discovery concerning their claims. *Zak*, 780 F.3d at 606 ("Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment.").

Considering the Motion attempts to use extrinsic evidence to support claims related to a restatement which has yet to be presented (*e.g.*, Def. Br. at 9-10, (citing Exs. 9-10)), Plaintiff should be permitted to receive internal correspondence about the discovery of, and effect of, the restatement and the circumstances of the Individual Defendants' insider trading if the Court considers the Exhibits. Defendants should not be permitted to selectively provide information and conceal the whole picture from the Court.

#### 4.    Even If The Court Judicially Noticed Exhibits 40-81, Defendants' Stock Purchases Are Irrelevant.

Even if the Court were to take judicial notice of the trading shown by Exhibits 40-81 (it should not), Defendants' argument regarding the Individual Defendants' stock transactions is incorrect because Plaintiff does not rely on a financial motive to adequately plead scienter.

In all of Defendants' cited cases, plaintiffs *alleged a financial motive to commit fraud based on an incentive tied to the stock price.* Def. Br. at 27-28; *Jackson Inv. Grp., LLC,* 325 F. Supp. 3d at 1351 (purchases undermined inference of scienter where plaintiffs alleged motive was based on family members insider trading sales); *Hilb Rogal*, 432 F. Supp. 2d at 571 (purchases undermined inference of scienter where plaintiffs alleged motive based in part on increased executive

26

compensation in the form of stock option grants); *I.B.E.W. v. Ltd. Brands, Inc.,* 788 F. Supp. 2d 609, 631 (S.D. Ohio 2011) (purchases undermined inference of scienter, where plaintiffs alleged motive based in part of the company's stock price); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (purchases undermined inference of scienter where plaintiffs alleged motive based on insider trading sales).

Defendants' argument that in-class period net acquisitions 'negate scienter' fails because Plaintiff's scienter allegations are not premised on a financial motive. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021) (reversing dismissal of complaint that failed to plead suspicious stock sales because "although such allegations may support an inference of scienter, they are not a sine qua non for raising such an inference"); *see also Epstein,* 203 F. Supp. 3d 655, 671 (D.S.C. 2016) (affirming "any factor by itself is inadequate to reveal or refute the presence of scienter").

Defendants baselessly assert that Plaintiff fails to surpass the "high bar" for complaints which lack motive. Def. Br. at 14-15. The pleading standards applicable to certain elements of securities fraud claims are heightened, but far from insurmountable. The facts as alleged in the Complaint and as set out *infra,* are sufficient to establish scienter absent motive allegation. *See Zak,* 780 F.3d at 610 ("because the nature of the alleged misstatements and omissions themselves give rise to a strong inference of scienter, we need not consider the plaintiffs' additional allegations regarding the defendants' financial motivations.").

### J.        Corporate Scienter May Be Properly Inferred.

"The Fourth Circuit has held that 'it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and disseminated the fraud.'" *Jeld-Wen,* 496 F. Supp. 3d at 966. Plaintiffs may do so by "alleg[ing] facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation[.]" *Kiken,* 155

27

F. Supp. 3d at 606. Here, such agents include, but are not limited to, the Individual Defendants. The Complaint details the Individual Defendants held themselves out to be knowledgeable about Space Services revenue practices (¶¶31, 54, 76 (Platzer); ¶¶31, 67, 69, 77, 78 (Basola); ¶¶55, 57, 61, 63, 65 (Krywe)); and former employee allegations support the allegation that Spire's leadership ignored that its R&D costs were improperly accounted to give the appearance of gross profit improvement ¶53. The Complaint thus raises a strong inference that at least one corporate agent of Spire acted with scienter.

## III.   THE COMPLAINT SUFFICIENTLY PLEADS LOSS CAUSATION

Loss causation is a showing that that the defendant's material misrepresentation or omission "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4). To plead loss causation, a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Specifically, "the plaintiff must plead (1) the exposure of the defendants' misrepresentation or omission, i.e., the revelation of new facts suggesting the defendant perpetrated a fraud on the market, and (2) that such exposure resulted in the decline of the defendant's share price." *Singer,* 883 F.3d at 445 (cleaned up). Although Rule 9(b) applies to loss causation allegations, "the disclosure or series of partial disclosures 'need not precisely identify the misrepresentation or omission,'" it need only "reveal to the market in some sense the fraudulent nature of the practices about which a plaintiff complains," which "relate back" to alleged misrepresentations. *Id*. at 446. A disclosure will "relate back" if it "even inferentially suggest[s]" that a defendant's prior representations were fraudulent or reckless. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 475 (4th Cir. 2011).

Plaintiff has established loss causation. On August 14, 2024, after the market closed, the Company disclosed it was "reviewing its accounting practices and procedures with respect to

revenue recognition" regarding certain Space Services contracts and "related internal control matters." ¶¶5, 33. The Company further disclosed it "may be required to restate or revise its previously issued financial statements" impacting "recognized revenue" and "additional financial measures such as gross profit." ¶¶5, 33. On this news, the Company's share price fell $3.41 or 33.56%, to close at $6.75 per share on August 15, 2024, on unusually heavy trading volume. ¶¶5, 34. This is sufficient to allege loss causation and indeed, Defendants do not dispute that Plaintiff has adequately pled August 14, 2024 as a corrective disclosure sufficient to show loss causation. Def. Br. at 34.

Instead, Defendants prematurely attempt to exclude the R&D statements, claiming that the August 14, 2024 disclosure only revealed the restatement of certain Space Services contracts and there was no stock decline when the R&D disclosures were made on November 4, 2024. Def. Br. at 33-34. When the market reacted to the news on August 14, it already understood that Spire's financial statements could no longer be relied upon. *See* ¶33. The disclosures on August 27, 2024 and November 4, 2024, announced further bases for a restatement, but did not reveal the actual impact of the restatement. ¶¶35-39. The magnitude of the restatement, including the full nature of the restatement, will not be revealed until Spire files its restatement. Thus, the loss caused by Defendants' fraud is not fully known, and Plaintiff need not show the loss caused by R&D statements at this stage. *Singer,* 883 F.3d at 446 ("neither a single complete disclosure nor a fact-for-fact disclosure of the relevant truth to the market is a necessary prerequisite to establishing loss causation"). "Regardless of whether or not plaintiff can prove by a preponderance of the evidence each and every one of its claims, the question of loss, if any, caused by defendants' alleged omissions and misrepresentations is a question of fact not appropriate, under these circumstances, for resolution in a motion for dismissal." *MicroStrategy*, 115 F. Supp. 2d at 635. The Complaint

alleges facts to support the theory that the leak of information related to the restatements resulted in the loss of stock price, which is sufficient at this stage.

Even if this was appropriate to resolve at this stage, the Company's disclosure of the R&D issues arose in the course of its review of its accounting issues and contracts which began on August 14, 2024. The disclosure of the R&D contract statements on November 4, 2024 relate to the August 14, 2024 disclosure as they concern an additional basis for the pending restatement. Given the relatedness between the R&D issues and the Space Services revenue issue, a causal relationship between the Defendants' misrepresentations and Plaintiff's loss is plausibly alleged. *Kiken,* 155 F. Supp. 3d at 609 ("[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds.").

## IV.    THE COMPLAINT ALLEGES §20(a) LIABILITY AGAINST THE INDIVIDUAL DEFENDANTS

Plaintiffs pleading a prima facie case of § 20(a) "must allege: (1) a predicate violation of § 10(b) and (2) control by the defendant over the primary violator." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129–30 (4th Cir. 2009).  The only basis for Defendants' challenge to this claim is that a primary violation has not been pled. Def. Br. at 35. As set forth in Secs. II. (B)-(J), *supra*, Plaintiff has alleged a primary violation, so a Section 20(a) claim has been adequately pled.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions in their entirety. If the Court grants all or part of the motion, Plaintiff requests an opportunity to amend, especially because Defendants have yet to file their restatement. This comports with "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities" whereby "leave to amend should be denied only when the amendment would be prejudicial to the opposing

30

party, there has been bad faith on the part of the moving party, or amendment would be futile."

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (describing

that multiple amended complaints were required, in part because the first amended complaint was

entered after defendants submitted a delinquent annual report and restatement while a motion to

dismiss was pending).

DATED: February 12, 2025

Respectfully submitted,

**BUTLER CURWOOD PLC**

By: */s/ Paul M. Falabella*
Paul M. Falabella (VSB No. 81199)
Craig J. Curwood (VSB No, 43975)
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (806) 648- 4848
Fax: (804) 237-0413
paul@butlercurwood.com
craig@butlercurwood.com

*Local Counsel for Lead Plaintiff Michal Bousso*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Kevin F. Ruf (admitted *pro hac vice*)
Casey E. Sadler (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
kruf@glancylaw.com
csadler@glancylaw.com

Rebecca Dawson
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 521- 8007
Facsimile: (212) 884-0988
rdawson@glancylaw.com

*Counsel for Lead Plaintiff Michal Bousso*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

32

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of February 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification to counsel of record.

<u>/s/ Paul M. Falabella</u>
Paul M. Falabella