**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE SPIRE GLOBAL, INC. SECURITIES LITIGATION | Master File No. 1:24-cv-1458-MSN-WEF |

<u>**DEFENDANTS' REPLY IN SUPPORT OF THEIR**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT.................................................................................................................................. 3

I.     The Opposition Fails to Appreciate That the PLSRA *Requires* the Court to Consider "Competing Inferences" at the Pleadings Stage. ................................................. 3

II.    The Opposition Confirms That Plaintiff Cannot Allege a Strong Inference of Scienter. ........................................................................................................................... 6

    A.    A straightforward application of *Yates* compels dismissal. ................................... 6

    B.    Even if *Yates* does not control, Plaintiff's scienter allegations fall short under well-established securities law principles.................................................... 7

        1.    Plaintiff concedes that she alleges no motive to commit fraud. ................ 7

        2.    The alleged GAAP errors do not support scienter. ................................... 8

        3.    The "core operations" inference does not apply here and does not support scienter..................................................................................... 10

        4.    Defendants' generic statements about Space Services' subscription business model do not support scienter. .................................................. 11

        5.    Platzer's transition from CEO to Board Chairman does not support scienter. ........................................................................................ 12

        6.    Defendants' internal-controls disclosures do not support scienter. ......... 14

        7.    The lack of a restatement cuts against scienter....................................... 15

        8.    Defendants' stock acquisitions also cut against scienter. ........................ 16

        9.    Plaintiff fails to allege corporate scienter. ............................................. 18

    C.    The more cogent and compelling inference is an honest error, not fraud............ 18

III.    Plaintiff Fails to Draw a Plausible Connection Between Her Loss and the R&D Statements. .................................................................................................................. 18

IV.    Plaintiff Fails to Justify Her Conclusory Request for Leave to File a Second Amended Complaint. ..................................................................................................... 19

CONCLUSION............................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                    **Page(s)**

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
    496 F. Supp. 3d 952 (E.D. Va. 2020) ................................................................7, 12

*Cozzarelli v. Inspire Pharm., Inc.*,
    549 F.3d 618 (4th Cir. 2008) .............................................................................2, 4

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) ................................................................................17

*Employs. Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v.*
    *MacroGenics, Inc.*,
    61 F.4th 369 (4th Cir. 2023) .................................................................................20

*Epstein v. World Acceptance Corp.*,
    203 F. Supp. 3d 655 (D.S.C. 2016)................................................................8, 9, 15

*Estrella v. Wells Fargo Bank*,
    497 F. App'x 361 (4th Cir. 2012) ..........................................................................20

*Firemen's Ret. Sys. of St. Louis v. Telos Corp.*,
    2023 WL 1512207 (E.D. Va. Feb. 1, 2023)..............................................................4

*Gonzalez v. Cano Health, Inc.*,
    2024 WL 4415216 (S.D. Fla. Oct. 4, 2024)..............................................................8

*Greenhouse v. MCG Cap. Corp.*,
    392 F.3d 650 (4th Cir. 2004) ..................................................................................5

*In re Akorn, Inc. Sec. Litig.*,
    240 F. Supp. 3d 802 (N.D. Ill. 2017) ......................................................................12

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ......................................................................................7

*In re Baxter Int'l Sec. Litig.*,
    2021 WL 100457 (N.D. Ill. Jan. 12, 2021) ..............................................................6

*In re Genworth Fin. Inc. Sec. Litig.*
    103 F. Supp. 3d 759 (E.D. Va. 2015) .......................................................................9

*In re Hertz Global Holdings, Inc.*,
    905 F.3d 106 (3d Cir. 2018).......................................................8, 9, 14, 16, 18

*In re Humphrey Hosp. Tr., Inc. Sec. Litig.*,
    219 F. Supp. 2d 675 (D. Md. 2002).........................................................................5

*In re James River Grp. Holdings, Ltd. Sec. Litig.*,
  2023 WL 5538218 (E.D. Va. Aug. 28, 2023)........................................................................10

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ..............................................................................9, 19

*In re PEC Sols., Inc. Sec. Litig.*,
  418 F.3d 379 (4th Cir. 2005) ...............................................................................................5

*In re Triangle Capital Corp. Sec. Litig.*,
  988 F.3d 743 (4th Cir. 2021) ........................................................................................13, 15

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
  432 F. Supp. 2d 571 (E.D. Va. 2006) ............................................................................16, 17

*Jackson Inv. Grp., LLC v. Thomas*,
  325 F. Supp. 3d 1334 (N.D. Ga. 2017) .................................................................................1

*Karp v. First Conn. Bancorp., Inc.*,
  2019 WL 4643799 (D. Md. Sept. 24, 2019) ..........................................................................9

*Katyle v. Penn Nat. Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ........................................................................................19, 20

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  2016 WL 3981236 (D.S.C. July 25, 2016) ..........................................................................12

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...............................................................................................4

*Kiken v. Lumber Liquidator Holdings, Inc.*,
  155 F. Supp. 3d 593 (E.D. Va. 2015) .................................................................10, 11, 15, 19

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
  876 F.3d 541 (4th Cir. 2017) .............................................................................................14

*Pension Trust Fund for Operating Engineers v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) .....................................................................................8, 14, 18

*Proter v. Medifast, Inc.*,
  2013 WL 1316034 (D. Md. Mar. 28, 2013).........................................................................8, 9, 11

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
  75 F.4th 232 (4th Cir. 2023) ...............................................................................................7

*Singer v. Reali*,
  883 F.3d 425 (4th Cir. 2018) .............................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................................2, 3

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018) ...............................................................13

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ......................................................................5, 17, 18

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ............................................................... *passim*

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ...............................................................................5, 7

## Federal Statutes

15 U.S.C. § 78u-4(b)(2)(A)......................................................................................15

15 U.S.C. § 78u-4(b)(3)(B)......................................................................................17

## Federal Rules

Fed. R. Civ. P. 9(b) ...............................................................................................18

Fed. R. Civ. P. 12(b)(6).............................................................................................3

Fed. R. Evid. 201(b)..................................................................................................4

## Federal Regulations

17 C.F.R. §§ 240.16a-2, -3(g)................................................................................17

### INTRODUCTION

With every new filing, Plaintiff's case for securities fraud becomes more implausible. Plaintiff's response to Defendants' motion to dismiss, ECF 72 (the "Response.Br."), now admits that her Complaint "does not allege a motive for Defendants to commit fraud." Response.Br.23.[1] It likewise admits that Plaintiff "has not alleged stock sales," *id.* at 24, a factor which courts have concluded itself "negates an inference of scienter," *Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1351 (N.D. Ga. 2017); *see* Opening.Br.27 (citing more authorities on this point). After all, why would Defendants intentionally mislead investors, for no reason, all the while increasing their own ownership of company stock at artificially inflated prices?

Plaintiff's story makes even less sense when one considers other incontestable factors firmly establishing an innocent, non-culpable inference: (1) Spire's auditor vetted and approved its annual financial statements that contained Spire's legacy revenue recognition approach to Space Services contracts; (2) Spire promptly announced the restatement when the issues came to light; and (3) the issues impacted only one of Spire's four business segments—Space Services— which comprised, at most, "25-29% of the Company's revenue." (Response.Br.4.) And even for *that* fraction, all the Complaint alleges is that the restatement will impact the *timing* of *when some* of those contract revenues will be recognized. (*See* ¶ 35 (describing restatement).)

Plaintiff's response to these factors is either to downplay them beyond what Circuit precedent permits, or to argue that the Court may not even consider them at this stage. (*See, e.g.*, Response.Br.12 (arguing that auditor sign-off on financial statements is an "affirmative defense" that may not be considered).) Plaintiff is wrong, as a matter of law, for several reasons.

---

[1] All defined terms used herein are the same as in Defendants' Opening Brief, ECF 62 (the "Opening Brief"). Citations to briefs are to internal page numbers, and citations to exhibits are to ECF page numbers. All references to "Ex." are to exhibits attached to the Justman Declaration, ECF 62 - ECF 64. Citations to "¶" are to the Amended Complaint, ECF 57.

First, this motion is not governed by normal principles under Rule 12, such that "all reasonable inferences must be drawn in *Plaintiff's* favor." (Response.Br.19.) The PSLRA has uniquely demanding pleading requirements, particularly for scienter. And under Supreme Court precedent, the Court "must consider, not only inferences urged by the plaintiff," but also "competing inferences rationally drawn from the facts alleged," which include "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 322 (2007).

Second, everything that Defendants cited in the Opening Brief is something that, under applicable precedent, must be considered in assessing scienter. Defendants cited information contained in the same SEC filings, press releases, and analyst reports incorporated by reference into the Complaint, or analogous materials that courts commonly take judicial notice of in deciding securities fraud cases. *See, e.g.*, *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 625 (4th Cir. 2008). And when one assesses the *whole* of the materials—not just things that Plaintiff takes out of context—the more cogent and compelling inference is one of non-scienter.[2]

Indeed, this conclusion is practically compelled by *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014), a case which Plaintiff barely addresses. The facts in *Yates* were much further towards an inference of scienter: the plaintiff alleged a motive to defraud, knowledge of accounting errors, high executive turnover, the firing of an outside auditor, and insider trading. Yet the Fourth Circuit still affirmed dismissal for failure to plead scienter. *Yates* is the beginning and end of the inquiry. The Court should dismiss the Complaint with prejudice.

---

[2] As one example, Plaintiff misleadingly cites a Spire press release for the proposition that Peter Platzer was "removed" as Spire's CEO (¶ 41), and then argues that this means the "the Company stripped him of the leadership of the Company he founded" after discovering alleged fraud. (Response.Br.19.) The press release itself says the opposite. (*See* ECF 62-39 (Ex. 38) at 33 (explaining the change was a "planned leadership transition").)

2

## <u>ARGUMENT</u>

**I.      The Opposition Fails to Appreciate That the PSLRA *Requires* the Court to Consider "Competing Inferences" at the Pleadings Stage.**

In opposing the motion to dismiss, Plaintiff raises the issue of what materials the Court may consider in ruling on this motion. Defendants submitted with their Opening Brief publicly available documents, including SEC filings, press releases, transcripts of earning calls and investor conferences, and analyst reports. (Opening.Br.3, n.1.) Plaintiff asserts that "[n]one" of these exhibits are properly before the Court and accuses Defendants of "present[ing] their own version of the facts." (Response.Br.2, 25 n.10.) Plaintiff is wrong, as a matter of law. Each of the exhibits is incorporated into the Complaint by reference or subject to judicial notice, and the Court not only may but *must* consider such materials in determining whether Plaintiff has satisfied the PSLRA's scienter requirement, as numerous courts have concluded.

In *Tellabs*, the Supreme Court clarified the standard for pleading a "strong inference" of scienter under the PSLRA. The Court held that to satisfy as "strong," an inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." 551 U.S. at 314. Because this inquiry is "inherently comparative," courts must consider not only "inferences favoring the plaintiff" but also "plausible, nonculpable explanations for the defendant's conduct." *Id.* at 323-24. In doing so, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* at 322-23.

Consistent with *Tellabs*, courts routinely consider materials that are incorporated into the complaint by reference or subject to judicial notice when deciding motions to dismiss securities-fraud claims. *See, e.g.*, *Yates*, 744 F.3d at 881, 885 (taking judicial notice "of the content of

3

relevant SEC filings and other publicly available documents included in the record" and analyzing scienter based on "the allegations in the complaint, viewed in their totality and in light of *all the evidence in the record*") (emphasis added); *Cozzarelli*, 549 F.3d at 625 ("While we must accept plaintiffs' factual allegations as true, the Supreme Court in *Tellabs* held that we should not decide the issue of scienter by viewing individual allegations in isolation . . . . Rather, we must examine the facts as a whole, including facts found in 'documents incorporated into the complaint by reference.'"). Even the out-of-circuit authority relied on by Plaintiff acknowledges, as it must, that *Tellabs* directs courts to consider such materials on a motion to dismiss. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Here, the exhibits to Defendants' motion are properly before the Court. The majority of the exhibits are quoted or referenced in the Complaint, and therefore the Court should treat them as incorporated by reference. Defendants are submitting a chart as an exhibit to this reply showing how much the exhibits they attached to the motion are cited in the Complaint. (*See* 2nd Declaration of Jeffrey P. Justman in Further Support of Defendants' Motion to Dismiss ("2d Justman Decl."), Ex. A.) "In assessing the adequacy of a securities fraud complaint, courts must consider the alleged misrepresentations and omissions as detailed in the Amended Complaint as well as the referenced public documents, such as disclosures made to the Securities and Exchange Commission." *Firemen's Ret. Sys. of St. Louis v. Telos Corp.*, 2023 WL 1512207, at *6 (E.D. Va. Feb. 1, 2023). Plaintiff's objection to the Court considering the very documents that she draws from is thus contrary to law. *See Cozzarelli*, 549 F.3d at 625-26.

The other exhibits are subject to judicial notice. Spire's stock price history (Ex. 33) may be considered because the price of a publicly traded stock "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid.

201(b), and Plaintiff does not dispute the exhibit's accuracy. *See Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 655 n.4 (4th Cir. 2004) (taking judicial notice of published stock prices).

Likewise, the SEC Form 4 filings (Exs. 40-81) showing the Individual Defendants' stock purchases and sales during the Class Period may be judicially noticed. *See In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 390 & n.10 (4th Cir. 2005); *In re Humphrey Hosp. Tr., Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 686 n.7 (D. Md. 2002). Plaintiff objects to these exhibits because Plaintiff "has not alleged stock sales." (Response.Br.25.) Unlike incorporation by reference, however, judicial notice is not limited to materials referenced in the complaint. *See, e.g.*, *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (considering evidence of defendants' stock purchases even though plaintiff did not allege stock sales). And Plaintiff's reliance on *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (Response.Br.24), is misplaced. *Zak* did not hold that SEC filings reflecting stock trades cannot be judicially noticed. Instead, *Zak* held that the specific filings submitted in that case failed to provide a comprehensive picture of the individual defendants' stock trades, and thus "did not provide a factual basis for the court's conclusion that no individual defendant sold Chelsea stock during the class period." *Id.* at 608. Here, in contrast, Defendants submitted all the Form 4 filings pertaining to each of the Individual Defendants during the Class Period, and Plaintiff has not disputed the accuracy or completeness of these filings.

Finally, other SEC filings can be judicially noticed even if they are not incorporated by reference into the Complaint (Exs. 37, 39). *See Yates,* 744 F.3d at 881 (taking judicial notice of "relevant SEC filings") (citing *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d at 390 & n.10).

Because the exhibits submitted with Defendants' motion are incorporated by reference or subject to judicial notice, the Court should consider them as part of its holistic analysis of sufficiency of Plaintiff's scienter allegations.

5

**II.  The Opposition Confirms That Plaintiff Cannot Allege a Strong Inference of Scienter.**

Turning to the merits of Plaintiff's claims, Plaintiff does not dispute that failure to plead a "strong[]" inference of scienter is a fatal defect. (Response.Br.8-9.) Because Plaintiff fails to meet that high bar, dismissal is appropriate.

**A.  A straightforward application of *Yates* compels dismissal.**

The Court should start—and if it wishes, end—its analysis with the Fourth Circuit's decision in *Yates*. As Defendants explained, *Yates* is on all fours. (Opening.Br.2, 17-18, 30-32.) The only difference is that *Yates* involved *more* substantial restatements and *more* detailed and compelling scienter allegations—and yet the Fourth Circuit *still* affirmed dismissal. (*Id.*) Because *Yates* is binding precedent, one would think that Plaintiff would spend meaningful time attempting to distinguish it.

She does not. The Opposition mentions *Yates* exactly twice, and both times Plaintiff simply quibbles over minor factual distinctions. (Response.Br.11, 23.) The Opposition's silence on this point is telling. Nor are Plaintiff's quibbles right in any event. Plaintiff first suggests that *Yates* is distinguishable because it purportedly involved a "new[er]" and more "challenging" accounting standard than ASC 606. (*Id.* at 11.) But Plaintiff just asserts this point; she cites no authority supporting it. *Cf. In re Baxter Int'l Sec. Litig.*, 2021 WL 100457, at *17 (N.D. Ill. Jan. 12, 2021) (plaintiff's burden to "cite . . . authority indicating that the [accounting] method…was as simple as they contend[]"). Nor could she, because, as the Court can see for itself, ASC 606 is a 172-page standard that public companies only began applying in 2018. (ECF 64-7 (Ex. 90) at 173-74; *Baxter*, 2021 WL 100457, at *17 (considering accounting standard at motion to dismiss stage); *see also* Opening.Br.29-30 (examples of other companies having to restate financials under ASC 606).) Simplicity is thus not a serious ground on which to distinguish *Yates*.

6

Plaintiff also attempts to cabin *Yates* by claiming that the inclusion of motive allegations there was not essential to the scienter analysis. (Response.Br.23.) But that's exactly the point. The plaintiff there *did* include motive allegations and yet the Fourth Circuit *still* held that was not enough. Plaintiff includes even less here. Dismissal should likewise follow.

**B.** **Even if *Yates* does not control, Plaintiff's scienter allegations fall short under well-established securities law principles.**

In performing the holistic scienter analysis, even if the Court ventures beyond *Yates* and examines each of the Complaint's scienter allegations (or lack thereof, in some cases) under other authorities, the analysis still points to the same conclusion: dismissal.

**1.** **Plaintiff concedes that she alleges no motive to commit fraud.**

Helpfully, Plaintiff agrees that she "does not allege a motive for Defendants to commit fraud." (Response.Br.23.) Under binding precedent, then, Plaintiff's other "circumstantial evidence of fraud must be correspondingly greater." *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 242 (4th Cir. 2023); Opening.Br.14-15.

Plaintiff tries to resist this heightened burden by noting that it is, in theory, possible to plead scienter without motive allegations. (Response.Br.23-24, 27.) This is true. But the cases Plaintiff cites only show how strong the other scienter allegations must be to make up for a lack of motive.[3] As detailed below, Plaintiff's non-motive allegations are not nearly so strong here.

---

[3] *See Zak*, 780 F.3d at 601-03, 608-10 (detailed, specific allegations about internal reports and meetings with government officials where defendants learned information that was directly contradictory to their public statements); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 696-97, 705-07 (9th Cir. 2021) (detailed, specific allegations about a negative internal memorandum that was "received and read" by the defendants and then hidden from investors, along with non-financial motive allegations); *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 960, 966-68 (E.D. Va. 2020) (detailed allegations about defendants' cover-up of an antitrust conspiracy that had been proven through a preceding antitrust trial); *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 670-71 (D.S.C. 2016) (similar, along with a "dozen" confidential witness allegations, an auditor's resignation, and ongoing government investigations).

### 2.    The alleged GAAP errors do not support scienter.

Turning to what Plaintiff does allege, the Opposition places a great deal of emphasis on the "nature and significance of" Spire's alleged GAAP accounting errors. (Response.Br.9-13.) But Fourth Circuit law is clear: a "mere . . . failure to follow GAAP, without more, does not establish scienter." *Yates*, 744 F.3d at 887 (quoting *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002)); *Proter v. Medifast, Inc.*, 2013 WL 1316034, at *14 (D. Md. Mar. 28, 2013) ("no inference of scienter based solely on GAAP or other accounting errors, even when such errors occur routinely"). That is why courts commonly dismiss securities fraud claims where the complaint is based largely on the alleged GAAP error itself, rather than on other evidence more indicative of *fraud*. (*See* Opening.Br.13, 19-20, 28-30, 32 n.4 (citing over a dozen cases).) Courts dismiss when the restatement was more significant, and covered a longer period, than the approximately two-year, 10% of annual revenues correction alleged here.[4] Courts also dismiss where the accounting error involved premature recognition of otherwise legitimate revenues, like the error alleged here.[5] If those cases failed to state a securities fraud claim, surely this case also fails to state a claim. This is particularly so because, as Plaintiff concedes, the forthcoming restatement is not expected to "impact the Company's statements of cash flows for any period." (¶ 33.) And "[c]ash flow[s]" are, arguably, "the single most

---

[4] *See, e.g.*, *In re Hertz Global Holdings, Inc.*, 905 F.3d 106, 112-13 (3d Cir. 2018) (restatement covered three years of financials and showed the company had overstated net income between 17-32% per year); *Pension Trust Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 937-38 (7th Cir. 2018) (three restatements covering ten years of financials, the latter of which showed that the company "had understated its liabilities from about 26 to 39 percent annually").
[5] *See, e.g.*, *Proter*, 2013 WL 1316034, at *4-6, *15 (company improperly applied "accrual" accounting under GAAP, which resulted in it "recogniz[ing] revenue that was not yet earned"); *Gonzalez v. Cano Health, Inc.*, 2024 WL 4415216, at *4 (S.D. Fla. Oct. 4, 2024) (ASC 606 restatement resulted in "$122 million of…revenue . . . that would have previously been recognized in 2021" now being "recognized in 2022").

8

important financial metric for valuing a company." *Karp v. First Conn. Bancorp., Inc.*, 2019 WL 4643799, at *1, *3-4 (D. Md. Sept. 24, 2019).

The few cases Plaintiff cites where a court allowed a restatement-based securities-fraud claim to advance only prove the point. In *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000), "the misstatements at issue reported that the company was earning millions of dollars in profits each quarter, when in fact it was *losing* millions per quarter," *Proter*, 2013 WL 1316034, at *14 (emphasis added) (distinguishing *MicroStrategy* on this basis); *Hertz*, 905 F.3d at 116 (same). The *MicroStrategy* plaintiffs also alleged that the defendants made nearly $100 million in suspicious insider sales, 115 F. Supp. 2d at 644-47, and that "the company's independent accountant was complicit in the fraud," *Proter*, 2013 WL 1316034, at *14-15.[6] Similarly, in *In re Genworth Fin. Inc. Sec. Litig.*, the restatement "reduced the Company's quarterly net operating income for its LTC business by *2,156%* and increased its quarterly expenses by 68%," and the complaint included detailed allegations about motive and the defendants' personal knowledge of the underlying accounting issues. 103 F. Supp. 3d 759, 783-86 (E.D. Va. 2015) (emphasis added); *see also* Response.Br.11 (citing older, out-of-district cases, *Baan*, *Red Hat*, and *McKesson*, that are distinguishable on similar grounds). Suffice it to say, Plaintiff alleges nothing like either of those cases here.

---

[6] Plaintiff argues that PwC's approval of the annual financials does not "exonerate Defendants." (Response.Br.12.) That is a deflection. Even if it does not begin and end the analysis, auditor approval of financial statements significantly undercuts an inference of scienter. Thus, Defendants have noted that when an auditor previously approved the restated financials, courts are reluctant to infer that those financials stemmed from an intentional fraud. (Opening.Br.28-29.) Plaintiff's cited cases are factually inapposite, *Epstein*, 203 F. Supp. 3d at 671 (auditor resigned its position), or concern affirmative defenses not asserted here.

>    **3.    The "core operations" inference does not apply here and does not support scienter in any event.**

Plaintiff next invokes the "core operations" inference. She reasons that because the restatement affected one of Spire's (four) business segments (Space Services), and because the Individual Defendants ran the company (Platzer as CEO, Krywe/Basola as CFO), that suggests that the Defendants *must* have known about issues with Space Services' accounting before the August 2024 restatement announcement. (Response.Br.13-17.) Not so, for two reasons.

First, the core operations inference is inapplicable here. How Spire *accounted* for a *subset* of contracts within a *subset* of its business (ultimately affecting only 10% of Spire's annual revenues) is simply not a "core operation" that executives would presumably be familiar with. (Opening.Br.19.) Plaintiff cites no case holding as much.[7] Nor is there any indication that analysts focused on Space Services' GAAP accounting practices (as opposed to the Space Services business more generally), such that the Individual Defendants would have been motivated to inquire deeper to satisfy the analysts. (*Contra* Response.Br.14-15.)

Second, even if the core operations inference were applicable, it is insufficient. The inference only carries weight in the scienter analysis if the plaintiff offers "detailed allegations establishing the defendants' actual exposure to the accounting problem." *Yates*, 744 F.3d at 890. As explained further below, the "personal knowledge" allegations Plaintiff makes here are neither "detailed" nor demonstrate the Individual Defendants' "actual exposure to" the alleged GAAP violations. *Id*.

---

[7] *Cf., e.g.*, *In re James River Grp. Holdings, Ltd. Sec. Litig.*, 2023 WL 5538218, at *21 (E.D. Va. Aug. 28, 2023) (insurer's reserves for its "largest client," Uber, were a "core operation" and defendants admitted "'watching' Uber reserves 'very carefully and very closely'"); *Kiken v. Lumber Liquidator Holdings, Inc.*, 155 F. Supp. 3d 593, 606-07 (E.D. Va. 2015) (manufacturer's Chinese supply chain was a "core operation" because it had a "singular impact on the company's overall growth" and defendants were "personally involved" in those efforts).

### 4. Defendants' generic statements about Space Services' subscription business model do not support scienter.

Plaintiff asserts that the Individual Defendants likely knew about the Space Services accounting issues before August 2024 because they "all claimed to be familiar with the Space Services accounting practices." (Response.Br.17.) Indeed, Plaintiff declares that the Individual Defendants were "specifically asked, directly and repeatedly about the manner in which the Company accounted for Space Services contracts and yet denied any issue." (*Id.* at 18.)

None of this is accurate. On the first point, all Plaintiff cites are public statements where Defendants described Space Services' *business model* and financial results at a high level of generality. (*See, e.g.*, ¶¶ 31, 77 ("pre-space CapEx is largely funded by customer billings"), ¶ 78 ("Space Services has a very significant data provision component after we launch"), ¶¶ 54, 61, 63, 65, 69 (generic statements reciting quarterly financial results).) None of the statements mentions accounting standards, much less the specific ASC 606 revenue-recognition standards that led to the restatement. In *Kiken*, by contrast, the court found that defendants likely knew about undisclosed regulatory issues with Chinese imports because "Defendants publicly boasted that they personally inspected the [Chinese] mills' sourcing practices and that the Company tested the wood from each mill to ensure quality and legal compliance"; indeed, public statements confirmed, some of the defendants were "directly involved in importing from China[.]" 155 F. Supp. 3d at 606-07. No such personal involvement in Space Services accounting is alleged here, and even if it could be inferred, mere involvement in Space Services accounting would not establish Defendants' *knowledge* of a failure to comply with ASC 606.

As for the second point, no Defendant was ever asked how Space Services contract revenues were being recognized. The only exchanges Plaintiff cites are high-level back-and-forths between Platzer and analysts about Space Services' business more generally. (*See* ECF 62-

11

7 (Ex. 6) at 16-17 (¶ 25) (discussion about "how big this space services business is as a percentage of ARR"); ECF 62-30 (Ex. 29) at 12-13 (¶ 76) (discussion over how much of Space Services "is truly subscription based").) It is implausible to conclude from these exchanges that Platzer was aware of problems with Space Services' GAAP compliance, much less that he deliberately hid such problems from investors. *Cf. KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at \*5, \*9-10 (D.S.C. July 25, 2016) (defendants gave specific, positive answers when directly asked about their acquisition strategy, even though they knew the strategy was causing problems).

Finally, Plaintiff's single confidential witness allegation—which vaguely gestures at problems with "R&D expenses"—adds nothing to the mix. (Response.Br.16 n.8.) Indeed, the Fourth Circuit has rejected confidential witness allegations far more robust than these. *See, e.g.*, *Yates*, 744 F.3d at 886-88 (statements from three confidential witnesses describing specific interactions with defendants about the accounting problems). The same result should follow here.

### 5. Platzer's transition from CEO to Board Chairman does not support scienter.

Plaintiff next argues that Platzer's "planned leadership transition" from CEO to Executive Chairman (Opening.Br.23) supports scienter because of the "temporal proximity" between the transition announcement and the restatement announcement. (Response.Br.18-19.)

Again, Plaintiff misses the mark. For one, none of Plaintiff's cases address the circumstance alleged here: an executive *staying* with the company and moving to another high-profile position like Executive Chairman.[8] Such internal personnel changes do not "support a strong inference of scienter" because it is "unreasonable to infer that by retaining [a former

---

[8] *See, e.g.*, *Jeld-Wen*, 496 F. Supp. 3d at 965 (inference of scienter only where CFO permanently departed company shortly following alleged corrective disclosure); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) (same).

12

CEO] in a high-profile, well-paid position, [Defendant] was punishing [the former CEO] for fraudulent conduct." *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1155 (C.D. Cal. 2018). Nor does Plaintiff allege that Platzer knew, at the time of the alleged misstatements, that Spire's Space Services revenues or government contract R&D expenses failed to comply with GAAP, further mitigating any inference of scienter from his role change. It is "difficult to give [] regime change [allegations] any weight toward a scienter inference" where, as here, there are no allegations of "contemporaneous knowledge" that the statements were materially misleading. *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 753-54 (4th Cir. 2021).

More still, Plaintiff's claim that Spire "stripped" Platzer of "the leadership of the company he founded" (Response.Br.19) is belied by the very SEC filings Plaintiff references in her Complaint as evidence of Platzer's "removal." (*Compare* ¶¶ 41, 124-25 (discussing Spire's December 3, 2024 "press release" announcing Platzer's "removal") *with* ECF 62-39 (Ex. 38) at 33 (contents of that press release).) As that press release explains, Platzer stayed on as Executive Chairman—arguably the second most important leadership role at the company—so that he could continue to "guide Spire's vision and . . . focus on securing major opportunities to drive the Company's growth strategy." (*Id*. at 33.) And given that Platzer's successor as CEO is his wife and fellow Spire co-founder, Theresa Condor, it is hard to credit Plaintiff's suggestion that the transition announcement indicates animus toward Platzer. (*Id*.; ECF 62-2 (Ex. 1) at 8.) Platzer continues to be well compensated in his new role, *see* 2d Justman Decl., Ex. 92 (Dec. 20, 2024 Form 8-K) at 3 (noting Platzer's €300,000 new annual base salary in Executive Chairman role), further negating any inference of scienter. *See Mattel*, 321 F. Supp. 3d at 1155.

Plaintiff is also wrong to suggest that Spire's announcement that Basola would depart Spire following the completion of the restatement supports an inference of scienter. (Response.Br.19.) The allegation that Basola is being pushed out because of fraud makes no

temporal sense, since the GAAP issues Plaintiff highlights predated his hire as CFO. Plaintiff's attempt to "stack inferences" to support scienter is prohibited by precedent. *See, e.g.*, *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("stacking inference upon inference in this manner violates the statute's mandate that the strong inference of scienter be supported by facts, not other inferences"). "[P]leading scienter requires more than pleading a link between bad news and an executive's resignation"; "[c]hanges in leadership" are "not, in itself, a symbol of fraud." *Hertz*, 905 F.3d at 119. Yet that is all Plaintiff attempts to allege here.

### 6. Defendants' internal-controls disclosures do not support scienter.

Plaintiff's contention that Defendants' "internal controls" disclosures support scienter also fails. (Response.Br.21-22.) Because the internal-controls disclosures show that Defendants were "paying attention to internal controls" and "remediating deficiencies," Plaintiff argues that *could* mean that Defendants were aware of the accounting issues underlying the restatement before they were publicly announced in August 2024. (*Id.* at 21.) But Plaintiff fails to appreciate that Spire's disclosures addressed *other* accounting issues and so cannot show that the Individual Defendants knew about the ASC 606 and R&D expense issues that Plaintiff alleges led to the restatement at issue in the Complaint. (Opening.Br.24-25.)

Public company accounting is a complicated business. Knowledge of one accounting issue does not suggest fraudulent concealment of *another* accounting issue, particularly where the issues are "quite different." *Kohl's*, 895 F.3d at 939, 941. And even if knowledge of one accounting problem could suggest a fraudulent intent to hide a different accounting problem, a company's *disclosure* of those issues weighs against a finding of scienter. Such disclosures show the defendants "act[ing] in good faith" "to keep investors updated about [the Company's] internal weaknesses." *Yates*, 744 F.3d at 892-94.

14

Plaintiff has no response to this point. The cases she cites involved executives who became aware of "red flags" with internal controls and then *didn't* disclose those issues to investors.[9] No such "red flags" or disclosures are alleged here.

Nor does Plaintiff have any response to Defendants' disclosures specifically warning investors that "other[]" "weaknesses in . . . our internal controls . . . may be discovered in the future," and "may result in a restatement of our financial statements for prior periods." (Opening.Br.25-26.) Defendants' explicit and repeated disclosure to investors of the very risk that Plaintiff claims Defendants hid from them "further strengthens the competing inference of innocence." *Triangle*, 988 F.3d at 755-56. None of Plaintiff's cited cases (Response.Br.21-22) involved defendants disclosing the allegedly concealed risk, like Defendants did here.

### 7.      The lack of a restatement cuts against scienter.

As for Plaintiff's argument that the "delay" in filing Spire's restated financials counsels in favor of scienter, that is precisely backwards. (Response.Br.22.) It is Plaintiff's job to plead specific facts "strong[ly]" suggesting that Defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2)(A). Plaintiff chose to file this lawsuit on August 20, 2024 (ECF 1) less than a week after Spire announced (on August 14) that it would be needing to restate its financials. (¶ 33.) If Plaintiff believed she needed information from an upcoming restatement to plead a strong inference of scienter, she could have waited to file the lawsuit until the restatement was issued. But she didn't. Nor did Plaintiff suggest in any of her later filings—in seeking to be appointed lead Plaintiff (ECF 22, 30, 33), or in proposing a briefing schedule for an amended complaint (ECF 52), or even in *opposing* Defendants' request for additional time (ECF 59)—that the

---

[9] *See, e.g.*, *Epstein*, 203 F. Supp. 3d at 669-70 (defendants received a "number of red flags" that their internal controls were deficient "including identification of a material weakness, revelations and major changes in the Company's business practices," and KPMG's resignation); *Kiken*, 155 F. Supp. 3d at 605 (similar).

15

restated financials would be necessary to address scienter. It is Plaintiff's burden to satisfy the PSLRA's pleading standard, not Defendants' burden to explain why the timing of the restatement does *not* create an inference of scienter.

Plaintiff's argument is also based on a false premise: that Spire is "delaying" issuing restated financials for some nefarious reason. (Response.Br.22.) There is no factual support for that. According to Plaintiff, Spire is having to restate over two years of financial statements, moving certain Space Services revenue, and certain R&D expenses, from one time period to another. (¶¶ 33-37.) That takes time to do correctly. Indeed, one would expect a public company to carefully ensure its restated financials were correct, lest any additional issues come to light and it later be accused of additional wrongdoing. In any event, none of Plaintiff's cases on "delay" create any inference of scienter merely from a company working deliberately to restate financials. (*Cf.* Response.Br.22.) And, as on other points, *Yates* contradicts Plaintiff's argument: there, the company announced in September 2006 that it would need to restate its financials, and the restatement was completed in April 2008. *See* 744 F.3d at 882-83. The Fourth Circuit did not consider that time period in deciding whether the plaintiff had sufficiently alleged scienter. *See id.* at 885-93; *see also Hertz*, 905 F.3d at 112-13 (no scienter even though complete restatement was not issued until nearly two years after restatement was first announced).

### 8.     Defendants' stock acquisitions also cut against scienter.

Next, Plaintiff does not dispute that the Individual Defendants were net purchasers of Spire stock during the class period. (Response.Br.24 ("Plaintiff has not alleged stock sales.").) This fact "negates an[y] inference of scienter." *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 594 (E.D. Va. 2006); Opening.Br.27-28.

In response, Plaintiff goes to great lengths to convince the Court that it cannot take this publicly known, indisputable reality into consideration in deciding whether Plaintiff has

16

sufficiently alleged scienter. (Response.Br.23-27.) Nonsense. As explained above, everything Defendants are telling the Court about the Individual Defendants' stock ownership is set forth in publicly available filings that Defendants are required by law to file with the federal government. *Supra* § I; *see* 17 C.F.R. §§ 240.16a-2, 240.16a-3(g) (mandatory stock transaction disclosure requirements for public company executives). Plaintiff does not allege that any Form 4 contains any false, inaccurate, or otherwise misleading statements. The Court can accordingly take judicial notice of the filings and the information contained therein.[10]

Nor is Plaintiff correct that courts will only take stock purchases into account if a plaintiff specifically alleges a motive to defraud based on stock sales. (*Cf.* Response.Br.26-27.) In *Webb*, the Ninth Circuit noted that the individual defendants "purchased additional stock during the Class Period"—which "support[ed] an inference of innocence"—even though the complaint did not allege that those defendants "sold any [company] stock during the Class Period[.]" 884 F.3d at 856. Judge Lee appeared to take a similar approach in *Hilb-Rogal*. *Cf.* 432 F. Supp. 2d at 593-94 (no allegations about defendants' stock sales). That is all Defendants ask the Court to do here.

Finally, Plaintiff's passing request for "discovery" about "the restatement and the circumstances of the Individual Defendants'" stock purchases is a non-starter. (Response.Br.26.) Discovery is automatically stayed under the PSLRA pending a decision on the motion to dismiss. *See* 15 U.S.C. § 78u-4(b)(3)(B). To bring a securities fraud claim, plaintiffs must *first* plead a claim *then* be entitled to discovery. Plaintiff offers no reason—and none exists—for the Court to flout that statutory directive.

---

[10] As already explained, *supra* § I, the Fourth Circuit's decision in *Zak* is not to the contrary. And *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) involved a completely different situation: a district court "dismiss[ing] [a] complaint based on statements the defendant made at the [motion] hearing." It has no bearing on the present dispute.

**9.** **Plaintiff fails to allege corporate scienter.**

As for corporate scienter, Plaintiff does not dispute that, to allege corporate scienter, she must "allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation." *Yates*, 744 F.3d at 885. Because Plaintiff does not make that showing with respect to any authorized agent of Spire—be it the Individual Defendants or the vaguely alleged "former employee," *supra* at 12—Plaintiff fails to meet this standard.

**C.** **The more cogent and compelling inference is an honest error, not fraud.**

Boiled down to its core, Plaintiff's claim is simply that Spire made accounting errors and so Defendants *must have* committed securities fraud in failing to disclose those errors earlier than they did. But this kind of vague, conclusory pleading isn't enough to state a claim under Rule 9(b), much less the more demanding standards set forth in the PSLRA and cases like *Yates*. Viewed holistically, the more compelling inference from the facts alleged is that Defendants' accounting team made an "honest mistake" about a complex accounting issue and then disclosed the issue shortly after it came to light. *Webb*, 884 F.3d at 856 (affirming dismissal of securities fraud claim based on analogous GAAP restatement); *accord Yates*, 744 F.3d at 893; *Kohl's*, 895 F.3d at 941; *Hertz*, 905 F.3d at 121. Indeed, the Opposition does not even try to construct a more "cogent and compelling" narrative than this. (*Cf.* Response.Br.22-23.)

The Court should accordingly follow the lead of *Yates* and the many other cases like it and dismiss the Complaint for failure to allege a strong inference of scienter.

**III.** **Plaintiff Fails to Draw a Plausible Connection Between Her Loss and the R&D Statements.**

Because a failure to allege scienter is a fatal defect, the Court need not address loss causation. If the Court does address loss causation, however, it should dismiss Plaintiff's claims related to the R&D Statements on this ground, too. (*See* Opening.Br.33.)

18

The argument in favor of dismissal is straightforward: Plaintiff does not allege any facts "even inferentially" connecting the August 14 corrective disclosure (and the resulting stock loss) to the R&D Statements. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 475 (4th Cir. 2011). Thus, she has not plausibly alleged loss causation with respect to those statements.

In response, Plaintiff claims that this deficiency doesn't matter because Spire's stock *may* fall again when "Spire files its restatement," which in turn *could* provide the missing link between the R&D Statements and a stock loss. (Response.Br.29.) But loss causation is an element of a securities fraud claim. *See Katyle*, 637 F.3d at 466 n.1. To survive dismissal, Plaintiff must plausibly allege *now* a causal link between each alleged misstatement and the loss pled in her Complaint. (*See* Opening.Br.34 (citing cases, unaddressed by Plaintiff, analyzing loss causation on a statement-by-statement basis).) Plaintiff's cases say nothing to the contrary.[11] And to the extent Plaintiff argues that the R&D accounting errors "relate to . . . the Space Services revenue issue"—thus linking the August 14 corrective disclosure to the R&D Statements—she points to no allegations supporting that connection. (Response.Br.30.) If anything, the Complaint only confirms the *lack* of a connection between the two issues. (Opening.Br.34.)

## IV.    Plaintiff Fails To Justify Her Conclusory Request For Leave To File A Second Amended Complaint.

Finally, the Court should deny Plaintiff's conclusory request for leave to amend her already-amended Complaint. (Response.Br.30-31.) Plaintiff seeks leave to amend in just two sentences, with no explanation of how she can amend the Complaint to address the significant deficiencies identified in the Opening Brief.

---

[11] *See MicroStrategy*, 115 F. Supp. 2d at 658 (plaintiff "pled sufficient facts" connecting stock loss following announcement of restatement to "improper contract recognition practices" underlying that restatement); *see also Singer v. Reali*, 883 F.3d 425, 446 (4th Cir. 2018) (discussing theory of multiple "corrective disclosures" not pled here); *Kiken*, 155 F. Supp. 3d at 609 (same).

Where, as here, "the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments [s]he wishes to make, 'the district court does not abuse its discretion in failing to give the plaintiff a blank authorization "to do" over [her] complaint.'" *Estrella v. Wells Fargo Bank*, 497 F. App'x 361, 362 (4th Cir. 2012); *see also, e.g.*, *Employs. Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 394 (4th Cir. 2023) (affirming denial of leave to further amend securities class action where plaintiff "failed to file a motion for leave to amend," "only [made] their request in a footnote in response to Defendants' motion to dismiss, and did not present the district court with a proposed amended complaint").

Plaintiff argues she should be granted leave to amend because Spire has not yet issued any restatement of its financials. (Response.Br.30.) But as noted above, this is a problem of Plaintiff's own making. Plaintiff is the master of her complaint. She made a strategic choice to file both the initial Complaint and the Amended Complaint before any restatement was issued. She must live with the consequences of that decision.

In any event, there is no indication that the forthcoming restatement will provide new facts that would rectify Plaintiff's pleading deficiencies with respect to the defective element here: scienter. As explained, GAAP errors alone cannot demonstrate scienter. *Supra* § II.B.2. But that is all the restatement could possibly reveal. Thus, giving Plaintiff a "blank authorization to 'do over'" her Complaint for a third time would be futile. *Estrella*, 497 F. App'x at 362; *accord Katyle*, 637 F.3d at 471 ("[A] a district court may deny leave if amending the complaint would be futile . . .").

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: February 21, 2025

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Jeffrey P. Justman*

Alison M. Agnew (VSB No. 90510)
1500 K Street, NW, Suite 1100
Washington, District of Columbia 20005
Telephone: (202) 842-8800
Facsimile: (202) 842-8465
alison.agnew@faegredrinker.com

Jeffrey Justman (*pro hac vice*)
Anderson Tuggle (*pro hac vice*)
Andrew McCarty (*pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
jeff.justman@faegredrinker.com
anderson.tuggle@faegredrinker.com
andrew.mccarty@faegredrinker.com

Timothy Katsiff (*pro hac vice*)
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
tim.katsiff@faegredrinker.com

*Counsel for Defendants Spire Global, Inc., Peter Platzer, Leonardo Basola, and Thomas Krywe*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February 2025, a true and correct copy of the foregoing Memorandum was served electronically via the CM/ECF system, which serves all registered users in this action.

/s/ Alison Agnew
Alison Agnew

22